878 So.2d 1236 (2004)
Darrell BAKER, Petitioner,
v.
STATE of Florida, Respondent.
Deryl Brooks, Petitioner,
v.
State of Florida, Respondent.
Jamie Edward Sly, Petitioner,
v.
State of Florida, Respondent.
Nos. SC02-775, SC02-1071, SC02-1094.
Supreme Court of Florida.
March 11, 2004.
Rehearing Denied July 15, 2004.
*1237 Darrell Baker, pro se, Crestview, FL; Deryl Brooks, pro se, Chipley, FL; and Jamie Edward Sly, pro se, Raiford, FL, for Petitioners.
No appearance, for Respondent.
PER CURIAM.
Petitioners Darrell Baker, Deryl Brooks, and Jamie Edward Sly have filed petitions for writs of habeas corpus, see art. V, § 3(b)(9), Fla. Const., collaterally attacking their noncapital convictions for various crimes committed in this state. We consolidate these cases for purposes of this opinion and dismiss the petitions as unauthorized. We further take this opportunity to explain how we will dispose of petitions for writs of habeas corpus filed by noncapital defendants seeking relief that can be obtained only, if at all, by motion in the sentencing court under Florida Rule of Criminal Procedure 3.850. Henceforth, we will dismiss petitions in which we can clearly discern either that the claims raised therein are procedurally barred or that the petition does not comply with the time requirements of the rule.

FACTS
In 1996, petitioner Darrell Baker was convicted and sentenced by the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida, for the crime of armed robbery.[1] Baker claims in his petition that his conviction should be vacated, and that he is entitled to a new trial, because the trial court failed to properly *1238 qualify the prospective jurors in his case during jury selection. Neither Baker's sworn petition, nor the attachments thereto, reveal whether he took an appeal from his armed robbery conviction and sentence and, if so, when any such appeal became final.
Petitioner Deryl Brooks was convicted and sentenced by the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, for various crimes. He appealed his convictions and sentences to the Fourth District Court of Appeal. That court affirmed without written opinion. See Brooks v. State, 636 So.2d 518 (Fla. 4th DCA 1994) (table case). Brooks asserts in his sworn habeas corpus petition that the mandate issued in his direct appeal in March of 1994. Brooks claims in his petition that he should be released from his "unlawful and unconstitutional detainment" because the trial court committed "fundamental reversible error" by failing to ensure that the prospective jurors in his case were properly sworn prior to jury selection.
Petitioner Jamie Edward Sly was convicted by the Circuit Court of the Twentieth Judicial Circuit, in and for Collier County, Florida, pursuant to a guilty plea, of first-degree premeditated murder and burglary of a dwelling with assault and battery. He was sentenced to life imprisonment with a twenty-five-year mandatory minimum term for the murder, and fifteen years' imprisonment for the burglary, both sentences to run concurrent to one another. Sly asserts in his unsworn petition that he did not appeal his judgment of conviction and sentence, but concedes that he has filed various unspecified "motions, applications and petitions in regard to his judgment of conviction." Sly claims in his petition that his convictions and resulting sentences should be vacated because his guilty plea was not knowingly and voluntarily entered and because there existed a conflict of interest between himself and his trial counsel. In his petition, Sly specifically challenges the sentencing court's use of the two-year time limitation set forth in Florida Rule of Criminal Procedure 3.850 to deny, in December of 2001, a motion for postconviction relief filed by him in that court. Sly argues without supporting factual explanation in his petition that "it would be a fundamental miscarriage of justice for this Court to bar or foreclose [him] from attacking the voluntariness of his plea" based on the two-year limitation set forth in rule 3.850.

ANALYSIS
These cases are representative of an increasingly large percentage of the petitions for writs of habeas corpus filed in this Court. For the reasons set forth in this opinion, we conclude that we should no longer transfer such petitions to the lower courts for consideration as motions for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850.[2] We further conclude that we should not continue denying such petitions either on the merits or on grounds that the claims raised are procedurally barred from being considered in collateral postconviction relief proceedings. Instead, we conclude that we should dismiss such petitions as unauthorized.

History of Florida Rule of Criminal Procedure 3.850
The history of rule 3.850, discussed in more detail below, indicates that *1239 it was intended to provide a procedural mechanism for raising those collateral postconviction challenges to the legality of criminal judgments that were traditionally cognizable in petitions for writs of habeas corpus.[3] Thus, this rule essentially transferred consideration of these traditional habeas claims from the court having territorial jurisdiction over the prison where the prisoner is detained to the jurisdiction of the sentencing court.
We begin our review of the history of rule 3.850 in 1963, the year in which this state was faced with an impending postconviction crisis. That year, the United States Supreme Court decided Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which held that the Sixth Amendment right to the assistance of counsel in criminal cases applied to state criminal prosecutions by virtue of the Fourteenth Amendment to the United States Constitution because it was one of those fundamental rights essential to a fair trial and, therefore, to due process of law. See id. at 339-45, 83 S.Ct. 792. On April 1, 1963, this Court attempted to provide a mechanism for meeting the demands for postconviction relief in Florida, which were inevitable in this state following the Supreme Court's decision in Gideon, by promulgating the first rule of criminal procedure, rule 1, the predecessor of our current rule 3.850. See State v. Weeks, 166 So.2d 892, 894 (Fla.1964); Roy v. Wainwright, 151 So.2d 825, 826-28 (Fla.1963); see also In re Criminal Procedure Rule No. 1, 151 So.2d 634 (Fla.1963).
This Court explained the history of and reasoning behind the adoption of the rule in a decision issued soon after its promulgation:
When confronted by the impact of the Gideon decision this Court became immediately concerned over the procedural facilities available to state prisoners who might have belatedly acquired rights which were not recognized at the time of their conviction. When Gideon was announced, the only practicable procedures available in Florida for a post conviction assault upon a judgment were by habeas corpus, or writ of error coram nobis. On September 15, 1962, the Florida Judicial Council instituted a study of post-conviction remedies and the advisability of establishing some expeditious method of disposing of post-conviction claims of deprivation of organic rights which occurred at trial. At its meeting on October 27, 1962, the Council specifically recommended the adoption of a rule or the enactment of a statute which would facilitate and expedite the handling of post-conviction claims.
The Division of Corrections reports that as of June 30, 1962, there were approximately 8,000 State prisoners in custody. Of this group 4,065 entered pleas of guilty without the benefit of counsel. Four hundred, seventy-seven (477) entered pleas of not guilty but were convicted without benefit of counsel. The announcement of the decision in Gideon made it obvious that a substantial number of prisoners would seek release or new trials because of this recently recognized constitutional privilege. This has become evident from a contrast of statistics before and after the Gideon decision. In 1962 this Court *1240 received 304 petitions for habeas corpus. Practically all of these were from allegedly indigent convicts in the State prison. Between January 1 and March 17, 1963, we received 82 such petitions. Between March 18, 1963, the date of Gideon, and April 5, 1963, we received 119 such petitions. This experience has served principally to suggest the essentiality of establishing a simplified, expeditious and efficient post-conviction procedure. We deem this important to the prisoner seeking relief, as well as to the public interest in the proper enforcement of the criminal laws. For many reasons, too numerous to enumerate at this time, many of these prisoners will not be entitled to post-conviction relief. Some will be.
In recognition of these concerns and in an effort to make adequate provision for the effective administration of justice, this Court took cognizance of its rule-making authority under Article V, Section 3, Florida Constitution. Pursuant to this authority we adopted and made effective on April 1, 1963, Criminal Procedure Rule No. 1....
Roy, 151 So.2d at 826-27.
Although not mentioned in the Roy decision itself, at least one commentator noted soon after the adoption of the rule that, absent its adoption, "thousands of prisoners in Raiford could [have been] expected to seek relief in the Florida Supreme Court, the First District Court of Appeal, and the Circuit Court of the Eighth Circuit." Gene D. Brown, Collateral Post Conviction Remedies in Florida, 20 U. Fla. L.Rev. 306, 306 (1968). Those courts, at the time the Gideon decision was handed down, had territorial jurisdiction over most, if not all, prisoners in the State of Florida. This commentator correctly noted:
This would have constituted an almost unbearable judicial responsibility, to the detriment of other litigants in those three courts. It would have required the supreme court and the First District Court of Appeal to appoint a commissioner in each case requiring factual determinations, and the circuit judges of the Eighth Circuit would have been overburdened with habeas corpus hearings.
Id. at 306-07. Today, the courts mentioned here still have territorial jurisdiction over a disproportionate number of the inmates in Florida's prison system.[4]
As recognized in this Court's decision in Roy, rule 1 "was promulgated to establish an effective procedure in the courts best equipped to adjudicate the rights of those originally tried in those courts." Roy, 151 So.2d at 828. It was further "intended to provide a complete and efficacious post-conviction remedy to correct convictions on any grounds which subject them to collateral attack." Id. In State v. Bolyea, 520 So.2d 562, 563 (Fla.1988), this Court explained that the rule "is a procedural vehicle for the collateral remedy otherwise available by writ of habeas corpus," and "was designed to simplify the process of collateral review and prescribe both a fact-finding function in the lower courts and a uniform method of appellate review."
*1241 While it is a basic guarantee of the Florida Constitution that "[t]he writ of habeas corpus shall be grantable of right, freely and without cost," art. I, § 13, Fla. Const., this Court recognized in Haag v. State, 591 So.2d 614, 616 (Fla.1992), that "the right to habeas relief, like any other constitutional right, is subject to certain reasonable limitations consistent with the full and fair exercise of the right." In creating rule 1, the historical predecessor to rule 3.850, this Court struck the delicate balance necessary to protect both the right to habeas corpus relief in Florida and the institutional needs of the state courts system.
In fact, as originally promulgated, the rule specifically preserved the right to obtain habeas corpus relief in certain limited circumstances. At the same time the rule recognized the limitations on that right:
An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this rule, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
In re Criminal Procedure Rule No. 1, 151 So.2d at 635. This language has survived virtually unchanged throughout the entire history of the rule and currently appears in subdivision (h) of rule 3.850. See Fla. R.Crim. P. 3.850(h).
The last clause of rule 3.850(h) might suggest that it is permissible to file a petition for writ of habeas corpus to test the legality of a prisoner's criminal judgment rather than to seek relief through an appropriate postconviction motion. However, the courts of this state have correctly interpreted this provision to mean that "habeas corpus may not be used as a substitute for an appropriate motion seeking postconviction relief pursuant to the [rule]." Harris v. State, 789 So.2d 1114, 1115 (Fla. 1st DCA 2001); see also Leichtman v. Singletary, 674 So.2d 889, 891 (Fla. 4th DCA 1996) ("The remedy of habeas corpus is not available as a substitute for post-conviction relief under rule 3.850, Florida Rules of Criminal Procedure."). Nor can habeas corpus be used as a means to seek a second appeal or to litigate issues that could have been or were raised in a motion under rule 3.850. See Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992) ("Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been ... or were raised on direct appeal."); Mills v. Dugger, 574 So.2d 63, 65 (Fla.1990) ("[H]abeas corpus is not to be used `for obtaining additional appeals of issues which were raised, or should have been raised, on direct appeal or which were waived at trial or which could have ... or have been, raised in' prior postconviction filings."); see also Patterson v. State, 664 So.2d 31, 32 (Fla. 4th DCA 1995) (affirming circuit court's denial of petition for writ of habeas corpus "[b]ecause it [was] apparent that [the] Defendant [was] seeking an untimely motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850").[5]
*1242 Thus, it is clear that, with limited exceptions, habeas corpus relief is not available to obtain collateral postconviction relief because most claims can be raised by motion pursuant to Florida Rule of Criminal Procedure 3.850.[6]
When rule 1, the predecessor to rule 3.850, was first promulgated by this Court in 1963, it specifically provided that all motions filed pursuant to the rule "may be made at any time." In re Criminal Procedure Rule No. 1, 151 So.2d at 634. However, the rule as initially promulgated also specifically provided that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." Id. at 635. Between 1963 and 1983, these provisions remained the same, even though the numbering of the rule itself changed. See In re Florida Rules of Criminal Procedure, 196 So.2d 124, 177-78 (Fla.1967) (renumbering rule 1 to rule 1.850); In re Florida Rules of Criminal Procedure, 253 So.2d 421, 421 (Fla.1971) (substituting the existing number system, "which is a prefix number of '1' followed by a decimal and additional numbers, [with] a numbering system which has a prefix number of '3' followed by a decimal and the numbers following the decimal as they now exist.").
In 1983, the law on the scope of relief available under the rule, particularly in light of the provision regarding second or successive motions, was explained by this Court in its decision in McCrae v. State, 437 So.2d 1388 (Fla.1983):
The purpose of the Rule 3.850 motion is to provide a means of inquiry into the alleged constitutional infirmity of a judgment or sentence, not to review ordinary trial errors cognizable by means of a direct appeal. The motion procedure is neither a second appeal nor a substitute for appeal. Matters which were raised on appeal and decided adversely to the movant are not cognizable by motion under Rule 3.850. Furthermore, any matters which could have been presented on appeal are similarly held to be foreclosed from consideration by motion under the Rule. Therefore, a Rule 3.850 motion based upon grounds which either were or could have been raised as issues on appeal may be summarily denied.
In addition to issues that were raised on appeal and those which could have been raised, which are not proper grounds, a motion under the Rule may also be summarily denied when it is based on grounds that have been raised in prior post-conviction motions under the Rule and have been decided adversely to the movant on their merits. A "second or successive motion for similar relief," as used in Rule 3.850 has thus been interpreted to mean a motion stating substantially the same grounds as a previous motion attacking the same conviction or sentence under the Rule. Furthermore, this restriction against successive motions on the same grounds is applied only when the grounds raised were previously adjudicated on their merits, and not where the previous motion *1243 was summarily denied or dismissed for legal insufficiency.
On the other hand, a second or successive motion by the same prisoner attacking the same judgment or sentence but stating substantially different legal grounds is permitted under the Rule and should not be summarily dismissed solely on the basis that the prisoner has previously filed another Rule 3.850 motion.
Id. at 1390 (citations omitted) (emphasis added).
In his concurring opinion in McCrae, then Chief Justice Alderman agreed with the result reached by the majority but suggested, in the interests of finality, that rule 3.850 be amended to provide further limitations on the ability of criminal defendants to obtain collateral postconviction relief under the rule:
I believe ... that we should impose a time limitation for filing 3.850 motions and should narrow the scope of grounds which may be alleged in successive petitions for relief. In order to give due weight to the finality and the presumption of legality of a final judgment and to restore the public's confidence in our criminal system of justice, we should amend rule 3.850 by adding a one-year statute of limitations on the filing of these motions. In my view, one year from the time the judgment becomes final, that is after the appellate process is concluded, is a sufficient and reasonable limitation period to place on the filing of these motions. This would include certiorari review to the United States Supreme Court if it is sought. There is no reason why a defendant, through the exercise of due diligence, cannot determine his basis for collateral attack during that period of time.
Moreover, I do not believe that successive motions to vacate should be allowed where the grounds alleged in the successive petition were known or could have been known to the defendant at the time he filed his initial motion for relief. A defendant should not be allowed to file one 3.850 motion after another to prolong his inevitable execution, each time reserving one or more grounds for relief that could have been alleged in his initial motion. The movant should be required to plead in his motion that he did not know and could not have known the grounds for his present motion for relief.
Id. at 1391-92 (Alderman, C.J., concurring in result only). In November of 1984, when this Court amended rule 3.850 to include language codifying the law as set forth in the majority opinion in McCrae, it also essentially accepted Chief Justice Alderman's suggestions in his concurring opinion in that case. See Fla. Bar re Amendment to Rules of Criminal Procedure (Rule 3.850), 460 So.2d 907 (Fla.1984).
First, the prohibition against relief under the rule based on claims which could have been raised on appeal, as stated in McCrae, was explicitly stated in the rule as follows: "This rule does not authorize relief based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." Id. at 908. This language now appears at the end of subdivision (c) of the rule. See Fla. R.Crim. P. 3.850(c).
Second, the then existing prohibition against the filing of second or successive motions for postconviction relief under the rule was modified to not only set forth in explicit detail the state of the law, as explained in McCrae, regarding when the prohibition would be applicable, but also to expand the scope of that prohibition to include not only claims that were raised but also those that could have been raised *1244 in a previous motion denied on the merits. See 460 So.2d at 908. The new provision specifically stated:
A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or his attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.
Id. This language now appears in subdivision (f) of the rule. See Fla. R.Crim. P. 3.850(f). As this Court explained less than two years after the addition of this language to the rule:
Abuse of the procedure doctrine existed in Florida before the recent amendment to rule 3.850. However, the doctrine was previously limited to providing for summary dismissal of issues contained in a successive motion that were or could have been raised on direct appeal and those issues which had previously been decided on their merits. The abuse of the procedure doctrine, as recently codified in rule 3.850, is now expanded to allow a court to summarily deny a successive motion for post-conviction relief unless the movant alleges that the asserted grounds were not known and could not have been known to the movant at the time the initial motion was filed. Further, the movant must show justification for the failure to raise the asserted issues in the first motion.
Christopher v. State, 489 So.2d 22, 24 (Fla.1986) (citations omitted).
Finally, the two-year limitations period for filing motions for collateral postconviction relief under the rule that was adopted in the same 1984 amendments discussed above provided:
A motion to vacate a sentence which exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than two years after the judgment and sentence become final unless it alleges (1) the facts upon which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained by the exercise of due diligence, or, (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.
460 So.2d at 907. This new time limitation on seeking relief pursuant to the rule became effective on January 1, 1985. See id. Prisoners adjudicated guilty prior to January 1, 1985, were specifically given until January 1, 1986, to file motions for postconviction relief in accordance with the new amended rule. See id. at 908. This time-limitation provision, with the additional exception for those circumstances where "the defendant retained counsel to timely file a 3.850 motion and counsel, through neglect, failed to file the motion," now appears in subdivision (b) of the rule. See Fla. R.Crim. P. 3.850(b).

Habeas Corpus and Rule 3.850 Relief
As the foregoing discussion makes clear, this Court has repeatedly revisited the parameters of the postconviction remedy provided by rule 3.850 in an effort to reasonably balance the needs of the state courts system against the necessary right to habeas corpus relief in Florida.[7] We *1245 assure the public that we will continue to do so. We must, however, take this opportunity to remind those convicted of noncapital crimes[8] in this state that, with limited exceptions, rule 3.850 is the mechanism through which they must file collateral postconviction challenges to their convictions and sentences. By promulgating rule 1 over forty years ago, we intended to direct such challenges to the sentencing courts of this state, and to prevent such challenges from being filed in this Court as petitions for writs of habeas corpus.
Because this Court has experienced a steady increase in the number of habeas corpus petitions filed by prisoners seeking collateral postconviction relief from noncapital criminal convictions and sentences, we believe that it is now time to make explicit what previously may only have been implicit. The remedy of habeas corpus is not available in Florida to obtain the kind of collateral postconviction relief available by motion in the sentencing court pursuant to rule 3.850. See State v. Dist. Court of Appeal of Fla., First Dist., 569 So.2d 439, 441 (Fla.1990) ("[R]ule 3.850 is intended to prohibit courts from entertaining habeas corpus petitions raising issues cognizable under the rule."), superseded on other grounds by rule in Amendments to the Fla. Rules of Appellate Procedure, 685 So.2d 773 (Fla.1996). We make this clear at this time because we cannot, consistent with our role as a court of limited jurisdiction, continue to expend our limited resources reviewing the merits of habeas corpus petitions, which like those in the present cases, seek the kind of collateral postconviction relief available through a rule 3.850 motion in the sentencing court.
We have made attempts in the past to save the trial courts of this state the trouble of having to rule on clearly procedurally barred or nonmeritorious claims for collateral postconviction relief, by denying such petitions in unpublished orders. See, e.g., Reyes v. Moore, 800 So.2d 615 (Fla.2001) (table case) (denying habeas corpus petition on the merits); Jolly v. Moore, 791 So.2d 1098 (Fla.2001) (table case) (denying habeas corpus petition as procedurally barred). This practice has been in keeping with the policy announced by this Court in Harvard v. Singletary, 733 So.2d 1020 (Fla.1999), that we would "decline jurisdiction and transfer or dismiss writ petitions which ... raise substantial issues of fact or present individualized issues that do not require immediate resolution by this Court, or are not the type of case in which an opinion from this Court would provide important guiding principles for the other courts of this State," but that we would continue our practice of denying those petitions where "we are able to determine on the face of the petition that the claim is successive or procedurally barred." Id. at 1021-22. However, by simply denying such petitions as procedurally barred or without merit instead of transferring them, we have inadvertently encouraged prisoners to file their collateral postconviction challenges to their noncapital criminal judgments of conviction and sentence directly in this Court, rather than the appropriate trial court, because our denials of such petitions have given prisoners the false hope that we might one day grant some of them relief. Accordingly, from now on, we will dismiss as unauthorized, habeas corpus petitions filed by noncapital defendants that seek the kind of collateral postconviction relief *1246 available through a motion filed in the sentencing court, and which (1) would be untimely if considered as a motion for postconviction relief under rule 3.850, (2) raise claims that could have been raised at trial or, if properly preserved, on direct appeal of the judgment and sentence, or (3) would be considered a second or successive motion under rule 3.850 that either fails to allege new or different grounds for relief, or alleges new or different grounds for relief that were known or should have been known at the time the first motion was filed.

CONCLUSION
Consistent with the analysis set forth in this opinion, we therefore dismiss the instant petitions as unauthorized.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion, in which PARIENTE and LEWIS, JJ., concur.
ANSTEAD, C.J., specially concurring.
I write separately to sound a note of caution and reminder that in our attempts to efficiently regulate a system for addressing postconviction claims we must constantly keep in mind that we are dealing with the writ of habeas corpus, the Great Writ, which is expressly set out in Florida's Constitution. That writ is enshrined in our Constitution to be used as a means to correct manifest injustices and its availability for use when all other remedies have been exhausted has served our society well over many centuries. This Court will, of course, remain alert to claims of manifest injustice, as will all Florida courts. As we reaffirmed in Harvard v. Singletary, 733 So.2d 1020, 1024 (Fla. 1999), "we will continue to be vigilant to ensure that no fundamental injustices occur."
We must also be mindful of the concerns expressed by Justice Overton in Harvard:
Habeas corpus jurisdiction is basic to our legal heritage. It is so basic that the authors of our habeas corpus jurisdiction made it unique with regard to this Court because it states that habeas corpus jurisdiction may not only be exercised by the entire Court, but it may also be exercised by a single justice. It is the only jurisdictional provision that gives authority to an individual justice. The provision also takes particular care to address the problem of resolving substantial issues of fact, a concern of the majority, by allowing the Court or any justice to make the writ returnable to "any circuit judge."
Id. at 1025 (Overton, Senior Justice, dissenting). With these concerns in mind, I concur with the basic premise of the majority opinion that postconviction claims that would ordinarily be subject to the strictures of rule 3.850 in the trial courts are not relieved of those strictures by filing the same claims in this Court.
PARIENTE and LEWIS, JJ., concur.
NOTES
[1] Baker's petition erroneously states that he was convicted and sentenced by the "1st Judicial Circuit Court of Jacksonville, Florida."
[2] See Fla. R.App. P. 9.040(b)(1) ("If a proceeding is commenced in an inappropriate court, that court shall transfer the cause to an appropriate court."); Fla. R.App. P. 9.040(c) ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy.").
[3] We note that, for defendants convicted and sentenced to death, rule 3.850 is no longer the mechanism through which they may file collateral postconviction challenges to their convictions and sentences. See Fla. R.Crim. P. 3.851. Consequently, nothing in this opinion should in any way be interpreted as placing any limitations on this Court's mandatory jurisdiction to review the propriety of a first-degree murder conviction and resulting sentence of death. See art. V, § 3(b)(1), Fla. Const.
[4] According to the website maintained by the Florida Department of Corrections, the total prison population in Florida is currently in excess of 75,000 inmates. Of that number, over half are incarcerated within the territorial jurisdiction of the First District Court of Appeal. See Fla. Dep't of Corrections, Monthly Fact Sheet, December 2003, available at http://www.dc.state.fl.us/pub/factsheet/1203/prison.html; Fla. Dep't Corrections, Average Daily Population by Facility, Fiscal Year 2002-2003, available at ht tp://www.dc.state.fl.us/pub/pop/facility/avgdaily.html.
[5] To the extent that certain language in the Fourth District Court of Appeal's opinion in Sullivan v. State, 674 So.2d 214 (Fla. 4th DCA 1996), might indicate to the contrary, see id. at 215 n. 1 ("If a defendant is beyond the time period for Rule 3.850 relief and the sentence has been served but for the improper jail credit time, a petition for habeas corpus would offer relief."), we note that such language was entirely dicta in that case and that the decision in Sullivan was later abrogated by our decision in State v. Mancino, 714 So.2d 429 (Fla.1998).
[6] For example, in Williams v. State, 777 So.2d 947, 950 (Fla.2000) we noted that prior to the 2000 amendment to rule 3.850(g) and the amendment to rule 3.850(b) made by this Court in Steele v. Kehoe, 747 So.2d 931 (Fla.1999), rule 3.850(h) accommodated the filing by prisoners in the trial courts of petitions for writs of habeas corpus seeking permission to either file belated motions for postconviction relief pursuant to the rule or belated appeals from denials of motions for postconviction relief filed pursuant to the rule, on grounds that the prisoner's attorney had agreed to file either the motion or the notice of appeal in a timely manner and had failed to do so.
[7] The promulgation of Florida Rules of Criminal Procedure 3.851 and 3.852, which refined the process of seeking collateral postconviction relief for those under sentence of death, are prime examples of this Court's continuing efforts in this area.
[8] This group includes those "defendants convicted of crimes that may be classified as capital in the Florida Statutes, but who were not actually sentenced to death." Huffman v. State, 813 So.2d 10, 12 (Fla.2000). In Huffman, we held that these "capital" crimes qualify as noncapital offenses for purposes of rule 3.850. See id.