957 So.2d 1183 (2006)
Danny ADAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-2042.
District Court of Appeal of Florida, Third District.
December 21, 2006.
Rehearing and Rehearing Denied May 24, 2007.
Bennett H. Brummer, Public Defender, and Valerie Jones, Assistant Public Defender.
Charles J. Crist, Jr., Attorney General, and Michael E. Hantman, Assistant Attorney General, for appellee.
Before GREEN and SHEPHERD, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied May 24, 2007.
GREEN, J.
The defendant, Danny Adams, appeals from the denial of his rule 3.850 motion for post-conviction relief. We treat this appeal as a petition for common law habeas corpus, and grant the same.
Facts:
In 1989 Danny was charged with second degree murder. Upon defense counsel's motion, the trial court ordered a psychological evaluation to determine whether Danny was competent to stand trial.
Competency Evaluation
The evaluation revealed that, possibly due to head trauma, Danny suffered from *1184 organic brain damage. He left school in the ninth grade, functionally illiterate, to go to work. Thereafter, he had trouble holding down a job because he often got lost on his way to work.
At age twenty-six (five years before the charged offense), Danny was diagnosed with schizophrenia. He was determined to be mentally disabled and received SSI disability payments, as well as psychiatric treatment and psychotropic medication.
The court appointed doctors found that Danny had an IQ of 47, and that he had "very little social awareness," "limited" judgment and "memory defects." Danny was found to be "oriented to place and person" but not to time. His memory was found to be "impaired for immediate, recent, and remote events." On March 7, 1990, the trial court declared Danny incompetent to stand trial, and remanded him to the custody of HRS.
The Plea
Over a year later, the parties stipulated to Danny's competence, and entered into a negotiated plea agreement which took his severe intellectual and mental deficits into account. This agreement required Danny to plead no contest to second degree murder, in exchange for a sentence of twelve years in prison, with drug treatment and credit for time served, followed by ten years probation. A special condition of probation was that upon release from prison Danny would undergo a psychological evaluation and if required would receive follow-up treatment.
Another negotiated special condition of Danny's probation, was that because of his severe deficits, Danny's penal exposure, in the event of a "technical" violation of probation, would be capped at seventeen years in prison, with credit for the twelve years already served. In that regard, the following discussion took place at Danny's sentencing:
[DEFENSE COUNSEL]: As a further provision to the probation, that in the event there's a violation of probation Mr. Adams maximum exposure is 12 years. I am sorry, 17 years giving him credit for the 12 years which he will have received in the event of violation.
[THE STATE]: That, of course, does not contemplate obviously it he commits another homicide not only is his exposure on probation violation, but I would agree it would be 17 years.
THE COURT: Does that mean for any except homicide?
[THE STATE]: No, for a probation violation. If he commits another crime, he needs to understand that . . .
Now, there is also a provision on the record that if you violate your probation once you are released for any reasons other than the commission of additional criminal offenses, that there would be a 17-year cap on the violation. So that is the limit and I will accept that and that is part of the plea negotiation . . .
THE COURT: . . . I want it to be clear. If the defendant commits another crime while he is on probation, then the 17-year cap would apply, but I don't anticipate Mr. Adams will be in any more trouble.
[DEFENSE COUNSEL]: The cap, the 17-year cap is the cap for any probation violation? Obviously, it is not a cap for a separate sentence should he commit another crime? Is that what the court intended?
THE COURT: If you want me to correct that, I will.
[DEFENSE COUNSEL]: Yes, I would like you to correct it.
THE COURT: The cap in the Danny Adams case, 17 years is the cap for any sentence in any probation violation that may arise.
*1185 Thereafter, the trial court accepted Danny's plea of no contest, and he was sentenced according to the terms of the plea agreement. The special condition containing the sentencing cap for a technical violation was not memorialized in the original order of probation.
Violation of Probation
In 1996, after his release from prison, Danny was charged with violating his probation by testing positive for using illegal drugs. This matter came up before a different judge, prosecutor and assistant public defender, none of whom were aware of his original plea agreement and its special conditions. This lack of awareness is best illustrated by the following discussion:
THE COURT: I see from the reports there was a dual diagnosis. Does he have a history of psychological problems, if you recall?
PUBLIC DEFENDER: I don't recall.
THE STATE: He was originally found incompetent for a period of time. That's why the plea was as it was. He was sentencedin looking at the report, there were some cases before where they felt he may have had some minimal brain injury.
The doctors who evaluated him did not believe there was any major mental illness of any kind. They recommended solely drug treatment placement.
Based on this "information" the trial court sentenced Danny to one-year community control followed by "ten years probation, special condition nine months residential treatment at Spectrum followed by three months aftercare, continued outpatient treatment, with random urine testing".[1] No psychological evaluation was requested, performed, or required.
Violation of Community Control
Predictably, following the successful completion of his residential drug treatment program, Danny was charged with violating his community control by failing to remain confined to his approved residence. At the time of his violation Danny was working twelve-hour days at a day labor pool. His community control permitted him to be out of the home on Saturdays to wash his clothes at a Laundromat from 3:00 p.m. to 6:00 p.m. The violation occurred on a Saturday when Danny's probation officer visited his home at 6:21 p.m. and found that he was not yet there. She left immediately and therefore was not at the residence when Danny returned home ten minutes later, 30 minutes late.
At the violation hearing the community control officer testified that when she went to the home Danny was not there but his mother claimed that he had returned from the Laundromat and had left again to visit his daughter. Danny took the stand and claimed that the Laundromat was crowded and that he could not get to a drier until 5:15 p.m., so he did not get home until about 6:30 p.m. He also testified that he had called his mom to let her know that he was running late. At the conclusion of the testimony, the trial court found that Danny had violated his community control.
At sentencing, the court, the state and defense counsel all admitted to knowing very little, if anything, about Danny, the circumstances of the underlying offense, his conviction and/or sentence. Based upon the state's recommendation the trial court sentenced Danny to life in prison for his tardiness. Specifically, the court found that:
[B]ased upon the fact this is the second violation for this case and the fact that you have violated every other time you *1186 have been given an opportunity to make your community control and violation I find you are a danger to the community and I will sentence you to life.
The revocation of probation and life sentence were affirmed by this court.[2]Adams v. State, 714 So.2d 1018 (Fla. 3d DCA 1998).
Motion to Correct Sentence
In August 2003, Danny filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). He argued that the imposition of a life sentence for a technical violation of his community control (i.e., returning home thirty-minutes late) breached the original plea agreement that capped imprisonment for a technical violation at seventeen years. The court, a new judge with no familiarity with Danny or his case, concluded that the life sentence did not breach the plea agreement because the cap only applied to a technical violation of the original sentence and did not pertain to the subsequent sentence of community control. Specifically, the court found that:
At the time the Defendant entered the plea he was advised by the Court that if he committed a technical violation of his probation he would be sentenced to no more than 17 years in prison. The defendant did commit a technical violation of his probation, and the Court honored the terms of the plea and revoked his probation and sentenced him to community control to be followed by probation. At the time of his sentencing on the probation violation, the Court did not set any sentencing caps in the event of a violation of his community control. Later, upon find that the Defendant violated his community control on August 11, 1997, the Court was no longer limited to the 17 year cap, and could lawfully sentence the Defendant to life in prison.
This appeal followed.
Habeas Corpus
As these facts illustrate, Danny is a schizophrenic with an IQ of 47 who ultimately plead to the charges against him because of the cap placed on his exposure to imprisonment. This cap was based on the parties' and the court's understanding that Danny's mental and intellectual deficits would make it difficult for him to abide by the technical requirements of his supervision. Regardless, once Danny was released from his initial imprisonment these protections somehow fell by the wayside. No one, including his own public defender, were aware of (or took into account) Danny's limitations when he was sentenced for his technical probation violation. Clearly, the fact that the sentence for this violation was within the guidelines set at the original plea hearing was mere happenstance.
The state cavalierly claims that Danny has no recourse for his lot because we do not have the jurisdiction to entertain his claims. It argues that we cannot address the merits of Danny's plight because he failed to file a motion to withdraw his plea at the first violation hearing. Moreover, the state suggests that the rule 3.850 motion was time barred. Although the state is technically correct, where as here, the court finds that a manifest injustice has occurred, it is the responsibility of that court to correct the injustice if it can. See Baker v. State, 878 So.2d 1236, 1246 (Fla.2004)(Anstead, C.J., specially concurring)(the writ of habeas corpus "is enshrined in our Constitution to be used as a means to correct manifest injustices and its availability for use when all other remedies *1187 have been exhausted has served our society well over many centuries. This Court will, of course, remain alert to claims of manifest injustice, as will all Florida courts."). See also Jamason v. State, 447 So.2d 892, 895 (Fla. 4th DCA 1983)("If it appears to a court of competent jurisdiction that a man is being illegally restrained of his liberty it is the responsibility of the court to brush aside formal technicalities and issue such appropriate orders as will do just justice.") (quoting Anglin v. Mayo, 88 So.2d 918, 919 (Fla. 1956)). In this case, it is readily apparent that the system has failed Danny. All the participants at the original sentencing hearing carefully structured a sentence and plea agreement that took into consideration both the need for an appropriate punishment for Danny's crime and his significant mental deficiencies.
No court, other than the original sentencing court and our court on this appeal, has been apprised of Danny's intellectual and mental deficits. As a result, Danny is now serving a life sentence in prison for returning home one half hour later than he was supposed to when one of his documented deficiencies has been found to be a lack of temporal awareness. This is a manifest injustice which we cannot permit to stand. Accordingly, we grant the petition for habeas corpus, reverse the sentencing order and remand with directions that the lower court resentence Danny for his community control violation, taking into account his deficits, and in accordance with his original plea agreement.
Petition granted.
SCHWARTZ, Senior Judge, concurs.
SHEPHERD, J., dissents.
NOTES
[1] Spectrum was a residential drug treatment in Miami-Dade County.
[2] Defense counsel, at oral argument, admitted that the original plea agreement and Danny's deficits were not raised on that appeal.