# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D19-2744
_____

CHRISTOPHER ARMSTRONG,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Francis Allman, Judge.

September 15, 2020


PER CURIAM.

AFFIRMED. Appellant is warned that any future filings that this Court determines to be frivolous may result in the imposition of sanctions, including a prohibition against any further pro se filings in this Court and a referral to the appropriate institution for disciplinary procedures as provided in section 944.279, Florida Statutes (2019) (providing that a prisoner who is found by a court to have brought a frivolous or malicious suit, action, claim, proceeding, or appeal is subject to disciplinary procedures pursuant to the rules of the Department of Corrections).

LEWIS and NORDBY, JJ., concur; B.L. THOMAS, J., concurs with opinion.

B.L. THOMAS, J., concurring with opinion.

I concur in the opinion affirming the denial of relief under Florida Rule of Criminal Procedure 3.800 of Appellant's meritless claim that his forty-year prison sentence was an illegal upward-departure sentence. There can be no illegal "departure" sentences for any felony committed after October 1, 1998, where those sentences are imposed within the statutory-maximum term under section 921.002(1)(g), Florida Statutes. *Lane v. State*, 981 So. 2d 596, 598 (Fla. 1st DCA 2008) (quoting § 921.002(1)(g), Fla. Stat. (2006)) ("[t]he trial court judge may impose a sentence up to and including the statutory maximum for any [felony] offense."). Appellant was legally sentenced to forty years in prison for burglary with a person assaulted, as the statutory maximum term for his conviction was life in prison. *Id.*; § 810.02(2)(a), Fla. Stat. (2008). He was also subject to thirty years in prison for each of the four convictions of sexual battery with threats reasonably believed for a total potential sentence of 120 years imprisonment. §§ 921.002(1)(g), 794.011(4)(a) Fla. Stat. (2008); *George v. State*, 213 So. 3d 966, 968 (Fla. 1st DCA 2015) ("[T]he Florida Supreme Court and this Court have held that multiple punishments for separate and distinct acts of sexual battery during a single criminal episode are not barred by double jeopardy principles.") (citations omitted).

I would now require Appellant to show cause why he should not be subject to sanctions, including an order to the Clerk of this Court to refuse to accept any future filings unless signed by a member of the Florida Bar. *See Baker v. State*, 878 So. 2d 1236, 1243 (Fla. 2004) (citing *McCrae v. State*, 437 So. 2d 1388, 1391–92 (Fla. 1983) (Alderman, C.J. concurring) (holding that courts must limit successive postconviction cases and bar postconviction "attacks" on appellate courts "to give due weight to the finality and the presumption of legality of a final judgment *and to restore the public's confidence in our criminal system of justice*.") (emphasis added). The public has a right to appellate review in meritorious cases and to prevent the undue obstruction caused by meritless postconviction claims filed in the trial and appellate courts. In this case, it is particularly important to provide an analysis of Appellant's horrific crimes and his prior legal actions, none of which have been previously addressed in writing by this Court,

2

due to the lack of doubt of Appellant's guilt at trial and his prior meritless postconviction actions.

*Background*

In 2009, the victim of these crimes was a senior university student studying for final exams. The night of the incident she came home to a surprise birthday party arranged by her roommate and a few friends. Later in the evening, Appellant and his co-defendant Quentin Revels joined the party and were welcomed to stay. As the night progressed, the two men offered to cook for the small group, and the victim allowed them to use her kitchen. After Revels left to buy the ingredients, the victim told her roommate she was tired and went into her bedroom at about 4:00 a.m., while the party continued. The victim's roommate later checked the victim's bedroom door, which was unlocked, and the roommate assumed the victim was asleep.

At 4:36 a.m., Appellant texted Revels and told him people were leaving the party. Seconds later, Appellant texted Revels, "I'm in the house with old girl. Come to the side of the house by girl that's sleep [sic] window." Three minutes later, Appellant texted "In the front."

Revels and Appellant continued to exchange text messages. At 6 a.m., Revels texted Appellant, "Brah want some p----." Appellant texted back, "Come to the side window. I got you. Or come in the house." At 6:02, Revels texted, "I had to leave because they go [sic] to sleep." He then texted, "Call me ASAP." At 6:03, Appellant texted "I'm in with the girl that sleep [sic], the other one." At 6:06, Appellant texted, "Trying to get through the window." At 6:07, Revels texted Appellant, "Answer the damn phone or you're stuck." Appellant responded, "I'm never stuck. I'm with the old girl." At 6:10, Revels texted Appellant, "Answer the damn phone." At 6:11, Appellant texted back, "I'm in the bed with homegirl." Revels replied, "Just answer the damn phone, then." At 6:14, Appellant answered, "I can't. She sleep [sic]. Come to the first window." At 6:19, Revels texted, "I'm trying to get the laptop and get some p----. You got some. I want some." A minute later, Appellant texted, "I'm getting some," to which Revels promptly replied, "I want some. Where they at[?]". At 6:28, Appellant answered, "Come to the side. The window is up."

3

At some point, the victim awoke. She testified, "[a]s soon as I opened my eyes, the first thing I saw was a person standing next to my bed. I was sleeping on the right side of my bed and the person was standing on the left side, on the other side of the bed. And then I looked next to me and there was a person in the bed next to me also." She identified Appellant as the man who had been standing. She thought the man in the bed was Revels. She began to scream, but Revels twisted her head and threatened to kill her. She testified that she was afraid because she thought Revels would kill her.

She testified that her shorts and panties had been removed while she had been asleep. Revels commanded her to place a pillow over her head. After she put the pillow on her face, one of the men forcefully performed oral sex on her.

The victim cried and both men told her "to shut up, stop crying, you're being too loud." Regarding which of the men had performed oral sex on her, the victim later testified: "I was thinking it was the guy that was in my bed, but the pillow was on my face. But I assumed it was the guy that was already in my bed." After Revels committed two acts of forced sexual intercourse and two acts of forced oral sex, he then forced the victim to take a shower to remove evidence of the crimes. To ensure that the victim obeyed his commands, Revels pulled the shower curtain back while she showered.

The victim was sexually battered four times by Revels, while Appellant was found guilty of burglary with a person assaulted, as he intended to commit the burglary to commit sexual battery. In Appellant's trial, the jury was instructed on the law of principals, and he was found guilty of the sexual batteries, regardless of whether Revels alone committed the sexual offenses.[1] Appellant aided, abetted, or counseled Revels to burglarize the victim's home

---

[1] Section 777.011, Florida Statutes, states,"[w]hoever commits any criminal offense . . . or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such[."]

with the intent to sexually batter the victim, while both men threatened to kill her numerous times, and that threat was reasonably believed.

The evidence at the separate trials was overwhelming against both men. After the assault, the victim continued to cry, so Revels gave her a ring. He told her "his life was in her hands" and wrote down his name, his phone number, and Appellant's phone number on a post-it note. When the victim, her roommate, and a friend drove to the hospital, they saw a green Mustang, registered to Appellant, which contained two men; the car looked like the car in which Appellant and Revels had arrived at the party.

Law enforcement quickly linked the car to Appellant, who consented to a search of the car. They arrested Appellant. While in police custody, Appellant's phone rang, and Revel's number and photo appeared on Appellant's phone. The police then drove to the area of the victim's home, saw a man on a cell phone calling a number, and Appellant's phone, which was now in the police car, began ringing. The police arrested Revels and interviewed him.

Revels confirmed that the victim's statement was essentially accurate. He confessed he entered the victim's home through her window and forced her to have sexual intercourse and oral sex with him. He also admitted to giving her information about his tattoo and writing the information on the note. He admitted Appellant was his "God-brother" and that the two had been in the victim's bedroom. Revels stated that Appellant had been in the bed with the victim and had claimed that he had sexual intercourse with the victim before Revels joined. Revels also admitted to threatening to kill the victim. The victim identified Revels in court as the man in her bed during the criminal ordeal. Revels' DNA, fingerprints, and palm print were collected from the victim's body and home.

When Appellant was arrested, he initially denied being in the victim's home, but he then changed his story and admitted he had been in the victim's bedroom. However, he claimed he dove to the floor when Revels came into the bedroom. Appellant also claimed that he got off the floor, wished the victim a happy birthday, and left. He changed his story a second time and admitted he saw Revels get into the victim's bed and cover her mouth. He stated he

thought Revels was going to rape the victim and that Revels told the victim to be quiet.

The jury in Appellant's trial received the evidence of the text messages described above. The victim identified Appellant as the person who was standing next to her in her bedroom while another man was in her bed. She testified that she knew it was Appellant because he and Revels had been in her home during the party.

During Appellant's trial, the victim described what she experienced when she awoke to see Appellant standing next to her and Revels twisting her neck and threatening to kill her, and how both men acted together:

Q: What were you thinking at that time?

A: I was basically just waiting for everything to go black. I didn't know if I was going to live or die. And I just wanted to do everything right and hope that they didn't hurt me.

. . . .

Q: Do you know at that point whether both males were still in the room?

A: Yes.

Q: And how do you know?

A: I know that they were both still in the room because I heard them whispering to each other and talking to each other. And I don't remember, know exactly what they were saying, I heard them like go, (making whispering noise), you know, like whispering and, I don't know and the blinds were rustling.

Q: While the oral sex was being performed on you, what were you doing?

A: Just crying, just sobbing.

Q: How loud were you crying?

6

A: I guess pretty loud because *they were telling me to shut up, shut up, stop crying, you're being too loud, they'll hear us, tell her to stop crying.*

Q: And when you say they were telling me to shut up, could you hear two different voices telling you to shut up?

A: I heard them talking about *tell her to shut up, shut up, and then the other one said, shut up, you're being too loud, stop crying.*

Q: So they were both participating in telling you to be quiet?

A: *Yes.*

(Emphasis added).

Appellant was found guilty of all five charges and sentenced to forty years in prison for burglary with a person assaulted and four counts of sexual battery.

In both Appellant's and Revel's trials, appellate counsel for both men filed briefs pursuant to *Anders v. California*,[2] acknowledging that counsel could not assert any reversible error had occurred during the trials. This Court affirmed Appellant's convictions without opinion after independently reviewing the records. *Armstrong v. State*, 145 So. 3d 99 (Fla. 1st DCA 2012).

Following this decision, Appellant filed a post-conviction motion under Florida Rule of Criminal Procedure 3.850, asserting counsel had been ineffective in failing to adequately convince Appellant to accept the State's plea offer of twenty years in prison. The trial court denied that motion based on defense counsel's testimony in the evidentiary hearing.

Defense counsel testified that he explained to Appellant that he faced life in prison on the charged crime of burglary with a person assaulted. He also explained to Appellant the law of principals in Florida that made a person equally culpable even if

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

he did not personally rape the victim. Appellant's defense counsel further explained to him that his *minimum* guideline sentence was approximately thirty years in prison in addition to the potential life sentence Appellant faced.

Appellant adamantly wanted to go to trial, given that he had no intention of accepting a twenty-year prison term as a plea offer and was willing to accept the exposure of life in prison, although defense counsel correctly predicted he would not receive life in prison. "The posture was Mr. Armstrong wanted to go to trial . . . This was going to be a trial from the beginning." Defense counsel further testified that Appellant understood his culpability as a principal and that all of Revels' actions in committing the sexual batteries would "hurt him . . . which in essence is that [principal] theory of law." Defense counsel met with Appellant five times before trial, and the "central theme" of their conversations was Appellant's culpability under section 777.011, Florida Statutes (2008).

The trial court issued an order denying Appellant's motion asserting ineffective assistance of counsel under the Sixth Amendment to the United States Constitution. This Court affirmed the trial court's denial of Appellant's ineffective assistance of counsel motion without opinion. *See Armstrong v. State*, 243 So. 3d 924 (Fla. 1st DCA 2018).

*Analysis*

In the present case, Appellant filed a motion under rule 3.800, asserting that his forty-year sentence for a crime with a maximum term of life imprisonment is illegal under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), because the charged crime of burglary with a person battered or assaulted requires a separate jury finding that Appellant battered the rape victim. This argument is meritless as Appellant's cited cases only require separate jury findings to *exceed the statutory maximum.*

In Florida, a trial court is authorized to impose the statutory maximum term without any "departure" or separate jury finding for every felony offense. § 921.002(1)(g), Fla. Stat. ("The trial court judge may impose a sentence up to and including the statutory

maximum for any [felony] offense"). Appellant's forty-year prison sentence was less than the statutory maximum. Thus, the trial court did not upward depart but sentenced Appellant within its discretion as this Court held more than a decade ago:

> In *Apprendi,* the Supreme Court held that "other than the fact of prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. (emphasis added). In *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"

> Under the Criminal Punishment Code, a trial court may impose any sentence up to the statutory maximum without any additional factual findings. *See* § 921.002(1)(g), Fla. Stat. (2006) (stating that under the Criminal Punishment Code "[t]he trial court judge may impose a sentence up to and including the statutory maximum for any offense ...."); *see also* Fla. R. Crim. P. 3.992. Because the appellant was convicted of a second-degree felony the trial court could have sentenced appellant to as much as fifteen years' imprisonment without making any finding regarding victim injury. *See* §§ 775.082(3)(c); 784.045(2), Fla. Stat. (2006). As such, the scoring of death victim injury points does not violate the dictates of *Apprendi* and *Blakely*. *See Williams v. State*, 907 So. 2d 1224 (Fla. 5th DCA 2005) (holding that reliance on *Blakely* misplaced where defendant's sentence within statutory maximum for crime of which he was convicted); *Gisi v. State*, 848 So. 2d 1278, 1282 (Fla. 2d DCA 2003) (victim injury points must be submitted to jury if addition of points causes sentence to go beyond statutory maximum).

*Lane*, 981 So. 2d at 597–98.

9

Thus, because Appellant's sentence was not an upward departure and was less than the statutory maximum, the trial court properly denied the rule 3.800 motion. *See also Harper v. State*, 988 So. 2d 1212 (Fla. 1st DCA 2008). This well-established principle of law has been extensively cited in Florida. *See Remie v. State*, 100 So. 3d 744 (Fla. 5th DCA 2001); *Carter v. State*, 2 So. 3d 1037 (Fla. 3rd DCA 2009); *Williams v. State*, 288 So. 3d 44 (Fla. 2d DCA 2019). And, in federal district court:

> Further, *Apprendi* is only concerned with a fact that increases a penalty beyond the prescribed statutory maximum. Here, the statutory maximum sentence on the felon in possession of a firearm charge, a second degree felony, was 15 years imprisonment (Respondent's Ex. 5 at pg. 2); Section 775.082(3)(c), Fla. Stat. (person convicted of a second degree felony may be punished by a term of imprisonment not exceeding 15 years). His 10 year sentence did not exceed the statutory maximum. Moreover, in Florida,
>
> > a trial court may impose any sentence up to the statutory maximum without any additional factual findings. *See* § 921.002(l)(g), Fla. Stat. (2006) (stating that under the Criminal Punishment Code **"[t]he trial court judge may impose a sentence up to and including the statutory maximum for any offense...."**); *see also* Fla. R. Crim. P. 3.992.
>
> *Lane v. State*, 981 So. 2d 596, 598 (Fla. 1st DCA 2008). Because Petitioner pleaded guilty to the charge of felon in possession of a firearm, a second degree felony, the state trial court could have sentenced Petitioner (absent the plea agreement) to as much as fifteen years in prison without making any additional factual findings.

*Battle v. Sec'y, Dep't of Corr.*, No. 8:06-CV-1137-T-27TGW, 2010 WL 11636595, at *3 (M.D. Fla. Apr. 15, 2010) (emphasis added).

I would require Appellant to show cause why he should not be barred from further pro se appeals under *State v. Spencer*, 751 So. 2d 47 (Fla. 1999). Appellant is not entitled to endlessly relitigate

his criminal conviction for these offenses; the public and the victim are entitled to finality, as the Florida Supreme Court recognized long ago. *Rivera v. State*, 728 So. 2d 1165, 1166 (Fla. 1998) (citing *Attwood v. Singletary*, 661 So. 2d 1216, 1217 (Fla. 1995) ("This Court has a responsibility to ensure every citizen's access to courts. To further that end, this Court has prevented abusive litigants from continuously filing frivolous petitions, thus enabling the Court to devote its finite resources to those who have not abused the system.")). The Legislature has also recognized that prisoners should not be allowed to file meritless and abusive collateral appeals. *See* § 944.279, Fla. Stat.

This appeal is frivolous and abusive. Appellant has had *six* judicial opportunities to contest his convictions and sentences. Appellant's latest argument raised in this Court was completely meritless because as a principal under section 777.011, Florida Statutes, and under the Criminal Punishment Code's provision in section 921.002(1)(g), Florida Statutes, he was subject to a punishment of life in prison for the burglary he committed during which he (as a principal) and Revels sexually battered the victim four times. His forty-year prison term for this burglary was, therefore, not an "upward departure" as we held in *Lane. See* 981 So. 2d at 598–99.

In this case and Appellant's co-defendant's case, the rape victim had to testify *twice* in pre-trial depositions, testify *twice* at trial, give an interview to police soon after the assaults, undergo a sexual-assault [rape-kit] examination in the hospital, and *twice* identify her sexual assailants in court while describing their sexual crimes. She was required to relive this horrific experience multiple times through this process. This Court, the public, and crime victims are entitled to finality in criminal cases and criminal appeals. Appellant should be required to explain why the judicial labor in this horrific case should not be brought to an end, once and for all.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

Christopher Armstrong, pro se, Appellant.

Ashley Moody, Attorney General, and Damaris Reynolds, Assistant Attorney General, Tallahassee, for Appellee.