WILLIAM A. TAYLOR v. L. F. CHAPMAN, as Superintendent of Florida State Prison Farm.

173 So. 143.
Opinion Filed March 2, 1937.

402

*Zach H. Douglas* and *Leon H. Robbins,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, *John L. Graham,* Assistant Attorney General, *Loftin, Stokes & Calkins, Scott M. Loftin* and *Harold B. Wahl,* for Defendant in Error.

BROWN, J.—This writ of error brings before us for review an order, made by Circuit Judge Hal W. Adams as Judge *pro hac vice* of the Circuit Court for Alachua County, in habeas corpus proceedings, remanding the petitioner to custody. Plaintiff in error contends here, as he did in his petition for the writ, that the information, filed by County Solicitor of Dade County, to which the petitioner plead guilty and upon which he was adjudged guilty and sentenced, wholly fails to charge any offense against the laws of this State.

It appears that there was a previous habeas corpus proceedings, in which the information was attacked on the same ground, to-wit, that it failed to charge any offense known to the laws of Florida. This prior proceedings, had before Hon. H. F. Atkinson, senior Judge of the Circuit Court for Dade County, resulted in a similar order, holding the information sufficient and remanding the petitioner to the custody of the sheriff of Dade County, in whose custody he was when said former writ was sued out. It was after this test of the sufficiency of the information by habeas corpus in the Circuit Court (instead of by motion to quash the information in the Criminal Court, where the prosecution was pending, which was the proper procedure) that the petitioner withdrew his original plea of not guilty, and

the judgment and sentence above referred to was entered. But this order of Judge Atkinson's was not the basis of Judge Adams' order. Indeed, it was not included in the respondent's return nor brought to Judge Adams' attention until more than six weeks after the case had been heard and judgment rendered. Then it was that the respondent filed a petition asking the court to be allowed to file certified copies of the petition for writ of habeas corpus filed before Judge Atkinson and of Judge Atkinson's order of remandment, and asking that Judge Adams' order of remandment be amended *nunc pro tunc* by including therein an order making said papers a part of the record. This petition was denied, and, so far as this record shows, properly so. Generally speaking, an order *nunc pro tunc* is one by which the court does *now* what the court intended to do at the time the matter was originally acted upon but which was at that time inadvertently omitted. Also, clerical errors and misprisions may be thus corrected. See 34 C. J. 71-82. It follows that the order made by Judge Atkinson, and its effect, is not properly before us. True, we have in our decisions given effect to Sections 5441-5443, C. G. L., which make both a judgment remanding, as well as one discharging, a prisoner conclusive until reversed in the manner provided by the statute. D'Allessandro v. Tippins, 102 Fla. 10, 137 So. 231; State v. Hardie, 108 Fla. 133, 146 So. 97; State v. Prescott, 110 Fla. 37, 148 So. 533; State v. Drumbright, 116 Fla. 586, 156 So. 721. But that question is not properly presented for our consideration here.

The information here under attack reads as follows:

"Robert R. Taylor, County Solicitor for the County of Dade, prosecuting for the State of Florida, in the said County, under oath, information makes that William A. Taylor, and another person to the County Solicitor un-

known, of the County of Dade and State of Florida, on the 20th day of January, in the year of our Lord, one thousand nine hundred and thirty-six, in the County and State aforesaid, did then and there unlawfully, feloniously, and designedly, and with intent to defraud and cheat the Western Union Telepraph Company, a corporation, then and there engaged in the business of sending and receiving telegrams, money and bank credits from one place to another in the United States of America, attempt to obtain and receive from the said Western Union Telepraph Company a sum of money, to-wit: Two Hundred and Fifty Dollars ($250.00) money of the United States of America, a better and more particular description of said money being to the County Solicitor unknown, said money being then and there the property of the Western Union Telegraph Company, said money so attempted to be obtained and received by the said William A. Taylor and another person unknown to the County Solicitor, with the intent and purpose of converting the same to their own use and benefit; that is to say, that on said date, in said county and State aforesaid, the said Defendant, William A. Taylor, and another person unknown to the County Solicitor, caused to be sent by and through the Western Union Telegraph Company, a corporation, a certain telegram in the tenor and effect as follows:

" 'To Westlake Construction Co.,      Jan. 20, 1936.
       Railway Exchange Bldg.,
       St. Louis, Mo.

   Wire quick Two Hundred Fifty Dollars care of Western Union here; urgent.

                          Glenn R. Reed.'

and the said Western Union Telegraph Company, then and there believing that sender of said telegram was one Glenn

R. Reed, and being deceived thereby, and relying upon the false personation, and intending to deliver the said money to the said Glenn R. Reed when so authorized by the said Westlake Construction Company, a corporation, of St. Louis, Missouri, then and there sent the said telegram; that thereafter the Defendant, William A. Taylor, fraudulently prepared to then and there identify himself as Glenn R. Reed, called and presented himself to the Western Union Telegraph Company for the said sum of money, but in the meantime the Western Union Telegraph Company and its employee had been advised and learned that the sender of said telegram was not the real and true Glenn R. Reed, and by reason of such advice and information the Western Union Telegraph Company and its employee then and there refused to pay the said sum of money to the said defendant, William A. Taylor.

"That in truth and in fact neither the said William A. Taylor nor person unknown to the County Solicitor were Glenn R. Reed as falsely represented; that the Defendant, William A. Taylor, and person unknown to the County Solicitor, then and there knew the same to be false when they so made them and did then and there knowingly, willfully and intentionally make false representation with the intent then and there to deceive, injure and defraud the Western Union Telegraph Company, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida."

We have frequently held that habeas corpus is not a substitute for a demurrer, motion to quash, or writ of error, and that it is not a remedy for relief from imprisonment under a judgment based upon a warrant, information or indictment which is merely defectively or inartificially drawn. Ordinarily, an indictment or information which informs the defendant of the nature of the accusation against

him, which does not wholly fail to charge an offense, and which enables a defendant to prepare his defense and protects him from a subsequent prosecution for the same offense, will not on habeas corpus be held so fatally defective as to render the judgment of conviction and commitment rendered thereon void and of no effect. Amos v. Chapman, 108 Fla. 360, 146 So. 98; State, *ex rel.* Moir v. Mayo, 121 Fla. 212, 163 So. 521; Johson v. State, 99 Fla. 711, 127 So. 317; Lehman v. Sawyer, 106 Fla. 396, 143 So. 310; Hepburn v. Chapman, 109 Fla. 133, 149 So. 196. The power to discharge from custody by writ of habeas corpus is one that should be exercised with extreme caution and only in a clear case. It should not be so exercised as to needlessly embarrass the administration of justice. Reffkin v. Mayo, 115 Fla. 214, 155 So. 674.

The information here involved allegedly charged the defendant with an attempted false personation with the intent to deceive, injure, and defraud the Western Union Telegraph Company. See Section 7259, C. G. L.

Section 7544 C. G. L. provides that "Whoever attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such an offense, but fails in the perpetration, or is intercepted or prevented in the execution of the same, when no express provision is made by law for the punishment of such attempt, shall be punished as follows:" etc.

In Hogan v. State, 50 Fla. 86, 39 So. 464, 7 Ann. Cas. 139, this court said: "In an indictment for an attempt to commit a crime, it is essential to aver that the defendant did some act which, directed by a particular intent, to be averred, would have apparently resulted, in the ordinary and likely course of things, in a particular crime." See also Turner v. State, 100 Fla. 1078, 130 So. 617; Jones v. State, 22 Fla. 532. The information must, in short, aver the in-

tent to commit a crime and some overt act which is apparently adopted to effect that intent and which thus constitutes an attempt to carry that intent into effect. The statute above quoted is itself a very good definition.

Our conclusion is that, measured by these principles, the information does not wholly fail to state an offense against the laws of this State, and that the order remanding the petitioner to custody should be affirmed. The case of Jones v. State, *supra,* relied upon by plaintiff in error, was not a habeas corpus case, and is not controlling here. And the facts of that case were different. It is true that this information does not expressly allege that Taylor had not been authorized to "falsely" represent himself to be Glenn R. Reed, but it impliedly does so. Nor does the information allege that the relations existing between Reed and the Westlake Company were such that the Company would likely grant the wired request for the $250.00; nor that they did in fact grant the Western Union authority to pay such sum to Reed. On the other hand, the information does allege several overt acts on the part of Taylor, alleged to have been directed by a fraudulent intent to defraud the Western Union out of $250.00, and which acts would have apparently resulted in the ordinary and likely course of things in the commission of the crime. The alleged defects in the indictment, or some of them, were probably such as could have been successfully raised in the trial court by demurrer or motion to quash, but they are not such as would authorize the nullification of the judgment of conviction in habeas corpus proceedings brought some months later.

The final judgment remanding the petitioner to custody is accordingly

Affirmed.

WHITFIELD, P. J., and TERRELL and BUFORD, J. J., concur. ELLIS, C. J., and DAVIS, J., dissent in part.

DAVIS, J. (dissenting in part).—All the authorities hold that, in order to constitute an attempt, the act attemped must be a possibility. The statute provides (Section 7259 C. G. L., 5156 R. G. S.) that—"whoever falsely personates or represents another, and in such assumed character receives any property *intended to be delivered to the party so . personated,* with intent to convert the same to his own use, shall be punished as if he had been convicted of larceny."

Under this statute, as I construe it, no violation of it is legally or factually possible of commission unless there is in existence at the time of the false personation "property intended to be delivered to the party so personated."

The information in this case negatives the idea that the Western Union Telegraph Company, named in the information as the object of defendant's *attempt* (Section 7544 C. G. L., 5403 R. G. S.), was possessed of any money or property "intended to be delivered" to the falsely personated Glenn R. Reed. Therefore the felony defined and denounced by Section 7259 C. G. L., *supra,* was legally impossible of consummation by the accused had the Western Union Telegraph Company never suspected that defendant was falsely personating Reed, whereas his real identity was William A. Taylor. So what the defendant did was merely preparation to make an attempt, and not an attempt in the legal sense contemplated by Section 7544 C. G. L., as criminally punishable.

Section 7552 C. G. L., 5409, R. G. S., for example, defines an offense that can only be committed by a man with a woman. If the holding in this case prevails, then a man can be legally punished under 7544 C. G. L., for an *attempt* to violate Section 7552 C. G. L., with a sixteen old boy dis-

guised as a woman, and thought by him to be a woman, merely because he commits some overt act looking toward the completion of the offense with another whom he believes to be a woman and which would be capable of consummation if the other party were a woman, although the consummation of the *attempted* and intended offense would obviously be impossible of being committed in fact or in law under such circumstances.

If there were any punishable *attempt* in this case to violate Section 7259 C. G. L., *supra,* by falsely personating Glenn R. Reed, as alleged, the *attempt,* if any, was directed no farther than the addressee of the telegram and not the Western Union Telegraph Company. At no time was the Western Union Telegraph Company in position to pay, nor willing to pay, to Glenn R. Reed himself, had he not been falsely personated, the $250.00 mentioned in the information, because, so far as appears from such information, the Western Union Telegraph Company has never, from the inception until the frustration of the so called attempt, been possessed of any money "intended to be delivered to" Glenn R. Reed, the person alleged to have been *attempted* to be falsely impersonated as the proposed object of delivery of that sum of money had he (Reed) been present to receive it.

I think the information wholly fails to charge a violation of Section 7544 C. G. L., *supra,* when tested according to the most liberal rule of constitution that prevails when collaterally attacked on habeas corpus.

Under Section 7259 C. G. L., the gist of the crime there described is the obtaining of property then and there *intended to be delivered to the person falsely personated.* It is not the false personation itself. False personation alone without obtaining any property by reason of it, is not a vio-

lation of Section 7259 C. G. L., and so it is that the gist of any punishable attempt to commit a violation of Section 7259 C. G. L., by falsely personating another to obtain money intended to be delivered to the impersonated person, must consist of some attempt to obtain money *intended to be delivered* to the party personated if his personation is believed, and not a mere attempt to falsely personate. This is so, because false personation itself, without more, is not a crime under Section 7259, C. G. L. So a mere *attempt* at false personation cannot be a crime.

ELLIS, C. J., concurs.