PER CURIAM.
The Department of Corrections (DOC) sought emergency review of an order from the Nineteenth Judicial Circuit (the habeas court) granting a prisoner’s petition for writ of habeas corpus and ordering his release. The case was initially treated as a petition for writ of certiorari. However, because the state can appeal an order discharging a prisoner on habeas corpus, we redesignate this case as an appeal and treat the petition and response as the briefs and the appendix as the record on appeal. § 924.07(l)(f), Fla. Stat. (2010); Fla. R.App. P. 9.040(c).
The habeas court’s conclusion that the prisoner, Robert Reichman, was entitled to immediate release is erroneous as a matter of law. Further, the issue considered by the habeas court was already decided adversely to Reichman by the sentencing court in a rule 3.850 motion, and the habe-as corpus petition was procedurally barred. Accordingly, we reverse.

Facts

In 1984, a federal court sentenced Reichman to twenty years in prison for bank robbery. In 1989, he entered a negotiated plea in Escambia County circuit court case number 88-3633 to escape, bur *342 glary with an assault, and robbery. At the time of the plea, and unbeknownst to the sentencing court, Reichman also had a pending parole violation in a different federal case. After entering his state plea, he was released to federal authorities to serve the twenty-year bank robbery sentence. Later in 1989, pursuant to his plea agreement, he was sentenced in absentia in Escambia County to twenty-two years in prison. The sentencing order provided that the sentence was to run consecutive to “federal sentence now serving.”
In 1991, his federal parole was revoked, and he was required to serve the balance of the original sentence consecutive to the federal bank robbery sentence. He completed the federal bank robbery sentence on February 12, 2000 and began serving his federal parole revocation sentence. His federal parole sentence ended January 23, 2004, and on April 9, 2004, he was returned to Florida to serve his twenty-two-year state sentence.
Later in 2004, he filed a rule 3.850 motion in the sentencing court in Escambia County which treated his motion as timely filed. One of the claims raised in his motion was that his twenty-two-year state sentence was supposed to run consecutive only to his initial federal bank robbery sentence. He argued that he should have begun serving his state sentence when the first federal sentence ended on February 12, 2000 and he should receive credit towards his state sentence from that date.
In denying this claim, the sentencing court ruled:
The Court does not construe its instruction that the sentence be consecutive to the “federal sentence now serving” to mean that the state sentence began immediately upon the conclusion of Defendant’s initial federal sentence. Rather, it was the intent of the Court only that Defendant’s state prison sentence should not be served concurrently with his federal prison sentence and should be served at such time that Defendant was released from federal custody.
Reichman appealed the sentencing court’s order, and the First District Court of Appeal affirmed without a written opinion. Reichman v. State, 905 So.2d 128 (Fla. 1st DCA 2005).
In 2008, while incarcerated in Okeechobee County, Reichman filed a petition for writ of habeas corpus in the Nineteenth Judicial Circuit which has jurisdiction over the prison where he was housed. Again, he argued that the intent of his plea agreement was that the twenty-two-year state sentence would commence when he completed the federal bank robbery sentence and not upon completion of his entire federal term. He argued that the DOC was not applying his sentence as intended by the sentencing court. According to Reich-man, he was entitled to immediate release because his Escambia County sentence should have expired. In his petition, Reichman did not advise the habeas court that he had litigated substantially the same issue in Escambia County and the First District Court of Appeal and that his claim was rejected.
After ordering a response from the DOC, on August 11, 2010, the habeas court issued an order agreeing with Reichman that the state sentences commenced on February 12, 2000 because the only federal sentence Reichman was “now serving” when he entered the plea in the Escambia case in 1989 was the federal bank robbery sentence. The federal parole violation was not mentioned during the Escambia County proceedings. Nothing in the record indicated the 1989 state sentences would run consecutively to the federal parole revocation sentence. The habeas court recognized that Reichman’s argument was previously rejected by the sentencing court *343 and affirmed on appeal, but the order said nothing more about the sentencing court’s decision.
The habeas court held a hearing solely to determine how much gain time and credit Reichman had and whether he would be entitled to release. Following the hearing, the court ordered Reichman’s immediate release. This appeal followed, and the habeas court’s order was stayed.

Execution of the Sentences

The habeas court’s ruling is incorrect as a matter of law. Under both Florida and federal statutory law, sentences imposed at separate times in separate cases are presumed to run consecutively unless the court directs otherwise. 18 U.S.C.A. § 3584(a); § 921.16(1), Fla. Stat. (1989). Reichman is correct that the sentencing court could not order the Florida sentences to run consecutively to a parole revocation sentence that had not yet been imposed, but that does not resolve the issue in this case. Reichman agrees that the parole revocation sentence imposed in 1991 was not ordered to run concurrently with the Florida sentences.[1] The plea transcript in this case reflects that the state sentences were to be consecutive to his “federal time.” There is no dispute that the federal and state sentences are consecutive. Rather Reich-man’s claim is that he was entitled to serve his state sentences immediately following the federal bank robbery sentence.
Reichman has not cited any authority that would have required federal officials to transfer him to state prison before he completed his federal sentences. A defendant who has received state and federal sentences has no due process or other constitutional right to serve the sentences in any particular order. Merchant v. State, 374 N.W.2d 245, 247 (Iowa 1985). “The order in which the sentences are served is a matter of comity between the sovereigns.” Id. (citations omitted). “The law of comity is such that the two sovereigns may decide between themselves which shall have custody of a convicted prisoner; however, the sovereign having prior jurisdiction need not waive its right to custody.” State v. Start, 229 Neb. 575, 427 N.W.2d 800, 803 (1988) (quoting Joslin v. Moseley, 420 F.2d 1204 (10th Cir.1970)).
In this case, the plea agreement was structured so that the federal authorities would commence his federal bank robbery sentence first, giving federal officials primary jurisdiction. Under the doctrine of primary jurisdiction, federal officials could maintain custody of Reichman until he completed the federal parole revocation sentence. See Merchant, 374 N.W.2d at 246. Reichman had no right to serve his consecutive sentences in any particular order.

Habeas Corpus and Collateral Challenges

Before 1963, habeas corpus was the primary vehicle for raising collateral challenges to a conviction or sentence. Following the decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Florida Supreme *344 Court anticipated a flood of postconviction challenges and in 1963 enacted a rule of criminal procedure to allow such challenges to be raised by motion in the sentencing court. In re Criminal Procedure, Rule, No. 1, 151 So.2d 634 (Fla.1963); Roy v. Wainwright, 151 So.2d 825, 828 (Fla.1963) (explaining that rule 1 “was promulgated to establish an effective procedure in the courts best equipped to adjudicate the rights of those originally tried in those courts”) (emphasis supplied). The supreme court intended rule 1 (now rule 3.850) to largely supplant the need for habeas corpus and provide a simplified, orderly, and efficient procedure for raising postconviction challenges. Baker v. State, 878 So.2d 1236, 1240 (Fla.2004).
The Florida Supreme Court has repeatedly recognized that like other constitutional rights, the right to habeas relief is subject to reasonable restrictions. Id. at 1241 (quoting Haag v. State, 591 So.2d 614, 616 (Fla.1992)). In enacting a rule of procedure to govern postconviction challenges, the Florida Supreme Court “struck the delicate balance necessary to protect both the right to habeas corpus relief in Florida and the institutional needs of the state courts system.” Baker, 878 So.2d at 1241. To preserve this balance, since its inception the rule has provided that habeas corpus is not available if a defendant has or had an adequate remedy by postconviction motion. Id. at 1241; see Fla. R.Crim. P. 3.850(h).
Under rule 3.850, collateral challenges to a conviction or sentence must be brought in the court that imposed the conviction and sentence, which is the court best equipped to adjudicate those rights. Habeas corpus cannot be used to obtain a second appeal or to relitigate issues that could have been or were raised in a rule 3.850 motion filed in the sentencing court. Baker, 878 So.2d at 1241. The Florida Supreme Court has made clear that “with limited exceptions, habeas corpus relief is not available to obtain collateral postcon-viction relief because most claims can be raised by motion pursuant to Florida Rule of Criminal Procedure 3.850.” Id. at 1242 (footnote omitted).
Habeas corpus remains available if the petitioner is not authorized to apply for relief under rule 3.850, such as when a person challenges pretrial detention or other detention for which rule 3.850 relief is unavailable.
Section 79.09, Florida Statutes, provides that when habeas corpus is sought in a circuit court the papers “shall be filed with the clerk of the circuit court of the county in which the prisoner is detained.” § 79.09, Fla. Stat. (2010). This provision, however, cannot be used to circumvent the limitations on postconviction relief imposed by rule 3.850, and it does not permit a petitioner to seek postconviction relief through habeas corpus in whatever jurisdiction the petitioner happens to currently be.
 If a prisoner attempts to use ha-beas corpus to raise a successive or untimely collateral attack on a conviction or sentence entered by another court, the petition should be dismissed under rule 3.850(f) or (b) or transferred to the sentencing court for consideration under rule 3.850 or 3.800(a). Batista v. State, 993 So.2d 93, 95 (Fla. 5th DCA 2008); Richardson v. State, 918 So.2d 999, 1001 (Fla. 5th DCA 2006); see also Davis v. State, 26 So.3d 647 (Fla. 2d DCA 2010) (recognizing that a challenge to the legality of a sentence could not be raised in a habeas corpus petition and had to be raised in a rule 3.800(a) motion filed in the sentencing court and directing the lower court to transfer the matter to the proper court). “Only the court in which the defendant was convicted and sentenced has jurisdic *345 tion to consider collateral attacks on a judgment or sentence....” Broom v. State, 907 So.2d 1261, 1262 (Fla. 3d DCA 2005).
While it is true that a petition for writ of habeas corpus alleging an entitlement to immediate release must be filed in the court with jurisdiction over the facility where the prisoner is housed, Bush v. State, 945 So.2d 1207, 1213 n. 11 (Fla.2006), the “entitlement to immediate release” cannot be a veiled collateral attack on the conviction and sentence which could have been, or was, raised in a rule 3.850 motion in the sentencing court. See also Brown v. State, 894 So.2d 137, 159 (Fla.2004) (explaining that habeas corpus “should not serve as a second or substitute appeal and may not be used as a variant to an issue already raised”).
As the Florida Supreme Court explained in Baker:
We must ... take this opportunity to remind those convicted of noncapital crimes in this state that, with limited exceptions, rule 3.850 is the mechanism through which they must file collateral postconviction challenges to their convictions and sentences. By promulgating rule 1 over forty years ago, we intended to direct such challenges to the sentencing courts of this state.... The remedy of habeas corpus is not available in Florida to obtain the kind of collateral post-conviction relief available by motion in the sentencing court pursuant to rule 3.850.
878 So.2d at 1245 (footnote omitted).
For obvious reasons, the court that imposed the sentence is best equipped to review postconviction challenges. The sentencing court has the complete official record including any corrected or amended orders and other postconviction motions the defendant may have filed. The court can take judicial notice of its own files, and even without ordering a response, the judge can review the court file and attach portions of the record that refute a defendant’s claims. If fact finding is necessary, the attorneys and witnesses involved in the case are more likely to be available for an evidentiary hearing in the jurisdiction where the crime occurred and the defendant was prosecuted.
Requiring postconviction challenges to be brought in the sentencing court and precluding relitigation of claims through habeas corpus also safeguards important legal principles that may be overlooked if a prisoner can file a new habeas petition each time the prisoner is transferred to a new territorial jurisdiction. Unless there is a manifest injustice, res judicata and collateral estoppel bar relitigation of issues that were already decided. But, the habe-as court may not be aware that a matter has already been decided by another court. Unlike the filing of a rule 3.850 motion, a prisoner filing a habeas petition does not have to swear to the contents and is not required to provide information about the procedural history of the case including whether previous postconviction motions were filed. This can result in conflicting rulings from sister courts in the same case.
Generally, “the circuit court is not empowered, through habeas corpus, to review the propriety, regularity or sufficiency of an order of a court over which no supervisory or appellate jurisdiction is had.” State ex rel. Renaldi v. Sandstrom, 276 So.2d 109, 110 (Fla. 3d DCA 1973); see also Leichtman v. Singletary, 674 So.2d 889, 891 (Fla. 4th DCA 1996); State v. Broom, 523 So.2d 639, 641 (Fla. 2d DCA 1988).
Even before the enactment of rule 1, historically a writ of habeas corpus was available only in limited circumstances and could not be used to second-guess the deci *346 sion of another court of equal jurisdiction or to raise ordinary legal errors. Ex parte Bowen, 25 Fla. 214, 6 So. 65 (1889) (explaining that a writ of habeas corpus cannot be used to raise mere irregularities or procedural errors, which can be raised in a direct appeal, and concluding the writ properly issues only where the error renders the judgment or order causing detention void). The scope of habeas corpus was limited to situations where the petitioner can show that the restraint complained of is “without authority of law.” State v. Hardie, 108 Fla. 133, 146 So. 97 (1933).
“[JJurisdiction to issue a writ of habeas corpus confers no jurisdiction to thereafter order a prisoner released or discharged to the prejudice of the lawful exercise of jurisdiction by a co-ordinate court.” State v. Browne, 105 Fla. 631, 142 So. 247, 248-49 (1932). A circuit court judge in one county can discharge a person held pursuant to an order from another county if the court issuing the order was absolutely without jurisdiction or the order is void. Id at 250.
When considering a habeas corpus petition from a prisoner held pursuant to an order from another circuit court, the scope of habeas review is extremely limited. State ex rel. Scaldeferri v. Sandstrom, 285 So.2d 409 (Fla.1973).
[T]he circuit court is Not empowered generally to review by habeas corpus the orders of courts over which the circuit court does not have appellate jurisdiction, particularly as to the legal sufficiency of the order sought to be reviewed, although the circuit court may entertain such a proceeding and discharge a petitioner held under an illegal or void order.
Id. at 412 (citations omitted); Murray v. Regier, 872 So.2d 217 (Fla.2002); see also Alachua Reg’l Juvenile Det. Ctr. v. T.O., 684 So.2d 814, 816 (Fla.1996).
As demonstrated by Stang v. State, 24 So.3d 566 (Fla. 2d DCA 2009), rev. dismissed, 41 So.3d 206 (Fla.2010), problems can occur if a court with habeas jurisdiction reconsiders a sentencing issue previously resolved by the trial court or grants a petition without an adequate response or adequate record to review the petitioner’s claim. Stang, described by the trial judge as a “consummate conman,” submitted incomplete documentation with his petition for writ of habeas corpus. Based on the limited record provided, the Second District granted his petition, reducing a lawful twenty-two-year sentence to approximately two months. The Florida Supreme Court declined to accept jurisdiction. In dissent Justice Perry explained why the Second District’s decision was incorrect based on the trial court’s pronouncement of the sentence and how the habeas proceeding had resulted in a miscarriage of justice.[2]
As previously noted, part of the problem with a defendant challenging a sentence by a habeas petition in the jurisdiction where he is incarcerated is that the habeas courts do not have ready access to the same *347 records that the sentencing court has. The sentencing court can look at the court file in ruling on a postconviction motion and the appellate court in that jurisdiction similarly has access to its own records, which may include records from a direct appeal or other postconviction motions addressing the sentence.
The party responding to the habeas petition (in this case the DOC) may not have the same access to records as the state attorney and assistant attorney general in the sentencing court’s jurisdiction. It is not as easy for the responding party in another jurisdiction to inspect the court file and obtain records to refute the claim. Because habeas corpus is an original proceeding, the parties are creating the record before the habeas court. Stang, who was sentenced in Palm Beach County, attached only records that supported his claim, and the Assistant Attorney General in Tampa did not produce sufficient records to refute the claim and show that the written order Stang relied on was a scrivener’s error. Likewise, in this ease, the habeas court and this court may not have a complete picture of Reichman’s sentence and his prior challenges.
Reichman did not challenge the jurisdiction of the sentencing court or allege that his sentence is void or illegal. His allegation that his sentence was not executed as intended by the trial court is properly raised in a rule 3.850 motion. See, e.g., Sadler v. State, 980 So.2d 567 (Fla. 5th DCA 2008); Cruz v. State, 976 So.2d 695 (Fla. 4th DCA 2008). The sentencing court has already determined that Reich-man’s state sentences did not begin immediately upon completion of the federal bank robbery sentence. Contrary to Reichman’s arguments, the order denying his rule 3.850 motion reflects that the sentencing court did review the plea agreement. The court noted in the order that the plea agreement was attached and explained that the records were of poor quality because they were copied from microfiche due to the age of this case. The sentencing court also cited and attached the plea and sentencing transcripts. Reichman appealed, and the First District affirmed the denial of his rule 3.850 motion. Reichman had an adequate remedy under rule 3.850 and habeas corpus is not available to relitigate this issue. Fla. R.Crim. P. 3.850(h).

Res Judicata

Even before the enactment of rule 1, successive habeas corpus petitions were prohibited. “The rule in this State is that denial of application for habeas corpus precludes a subsequent application for ha-beas corpus in the same cause on the same facts and issues.” Moat v. Mayo, 82 So.2d 591 (Fla.1955); § 79.10, Fla. Stat. (1951); see also Scaldeferri, 285 So.2d at 411; D'Alessandro v. Tippins, 102 Fla. 10, 137 So. 231 (1931). Once fully litigated, the matter is res judicata, and section 79.10, Florida Statutes, enjoins a prisoner from relitigating the issue in a different forum. State ex rel. Miller v. Kelly, 88 So.2d 118 (Fla.1956); see also Graziano v. State, 305 So.2d 867 (Fla. 3d DCA 1975).
Reichman’s claim regarding the order of his sentences was already decided against him and affirmed on appeal. Even if he somehow believes that the plea agreement provided he would serve the state sentences immediately after the federal bank robbery sentence, there is no prejudice or manifest injustice in refusing to reconsider this issue because he is presently serving the same amount of time as if he had served the sentences in that order. See State v. McBride, 848 So.2d 287, 291-92 (Fla.2003) (discussing the manifest injustice exception to collateral estoppel). If Reichman had served the state sentences second and the remainder of the parole *348 sentence third, he would still be incarcerated in federal prison. All of the sentences were to run consecutively and even if Florida courts had any influence over the order of the sentences, at this point, there is no way to change the order in which they were served. See McCall v. State, 475 So.2d 1364 (Fla. 2d DCA 1985) (concluding defendant’s challenge to his indefinite Florida sentence was moot because he completed the sentences from the other jurisdiction and was now serving his Florida sentence). By raising this issue after he completed his federal sentences, Reichman is simply trying to make his state sentences run concurrently with the federal parole sentence.

Conclusions

The Florida Supreme Court has cautioned against improvidently granting habeas corpus in unclear cases: “The power to discharge from custody by writ of habeas corpus is one that should be exercised with extreme caution and only in a clear case. It should not be so exercised as to needlessly embarrass the administration of justice. Reffkin v. Mayo, 115 Fla. 214, 155 So. 674.” Taylor v. Chapman, 127 Fla. 401, 173 So. 143, 145-46 (1937). “The purpose of a habeas petition is not to challenge the judicial action that places a petitioner in jail; rather, it challenges the detention itself.” Jones v. Fla. Parole Comm’n, 48 So.3d 704 (Fla.2010).
Since the enactment of rule 1 and later rule 3.850, nearly all collateral criminal challenges must be brought in the sentencing court, the court best equipped to review such challenges. Circumstances that may warrant .raising a postconviction claim in a petition for habeas corpus should be exceedingly rare. An allegation of “entitlement to immediate release” does not permit a prisoner to circumvent the limitations of the postconviction rules or to relit-igate issues in the jurisdiction where the prisoner happens to be housed.
By operation of law, the sentences at issue in this case did not run concurrently and federal authorities had no obligation to release Reichman before he completed his federal sentences. He is not entitled to immediate release. In addition, his claim is procedurally barred because he had an adequate remedy under rule 3.850 and this matter was already decided against him in the sentencing court and affirmed on appeal.
The circuit court’s order granting the petition for writ of habeas corpus and discharging Reichman is reversed. Reich-man shall remain in the DOC’s custody to complete his Escambia County sentences.

Reversed.

POLEN, HAZOURI and MAY, JJ., concur.

. A state court cannot compel a federal court to make its sentence concurrent with a state sentence. Perkins v. State, 696 So.2d 1343 (Fla. 2d DCA 1997). Reichman knew that he was charged with a federal parole violation when he entered the state plea. He did not bring the pending parole violation to the sentencing court's attention or negotiate to have his state sentences run concurrent with any sentence imposed in the parole case. If he had negotiated for a concurrent sentence, state sentencing could have been deferred until he was sentenced for the parole violation. He cannot, through his silence and inaction, now cause these sentences to run concurrently. See Lindsey v. Mayo, 153 Fla. 465, 14 So.2d 809, 810 (1943).

. Justice Lewis concurred with the majority decision to decline jurisdiction and, in responding to some of Justice Perry's arguments, concluded the Second District followed clear appellate rules and "acted within its permissible scope of review.’’ However, it is worth noting that the Second District was not acting in its review capacity because it had decided to treat Stang’s certiorari petition as an original petition for habeas corpus in the district court. Because this was an original petition, the Second District was not limited to the record before the Tenth Circuit Court and could have directed the parties to file any portions of the record necessary, including die sentencing transcript, to decide whether Stang was actually entitled to release. Fla. R.App. P. 9.220.