NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FLORIDA DEPARTMENT OF                )
AGRICULTURE AND CONSUMER              )
SERVICES and FLORIDA                  )
COMMISSIONER OF AGRICULTURE,          )
                                      )
        Appellants,                   )
                                      )
v.                                    )       Case No.  2D18-1393
                                      )
JOSEPH DOLLIVER; NANCY DOLLIVER;      )
JOHN KLOCKOW and DEANNA               )
KLOCKOW, Trustees of the Klockow      )
Living Trust; CHARLES STROH; LOIS     )
STROH; THE CERTIFIED CLASS OF LEE     )
COUNTY HOMEOWNERS; RAYMOND            )
DELLASELVA; MARY E. DELLASELVA;       )
and MARIANNE J. SANSON, Trustee of    )
the Marianne J. Sanson Revocable Trust, )
                                      )
        Appellees.                    )
_____)

Opinion filed November 13, 2019.

Appeal from the Circuit Court for Lee
County; Keith R. Kyle, Judge.

Wesley R. Parsons and Karen H. Curtis of
Clarke Silverglate, P.A., Miami, for
Appellants.

Robert C. Gilbert of Grossman Roth Yaffa
Cohen, P.A., Coral Gables; and Bruce S.
Rogow and Tara Campion of Bruce S.
Rogow, P.A., Fort Lauderdale, for
Appellees.

SILBERMAN, Judge.

The Florida Constitution provides in what is commonly referred to as the "Takings Clause" that "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner." Art. X, § 6(a), Fla. Const. Appellants, a class of homeowners in Lee County (the Lee Homeowners), have spent sixteen years fighting for their constitutional rights to payment of compensation for the taking of their property by the Florida Department of Agriculture and Consumer Services and the Florida Commissioner of Agriculture (the Department).

In this stage of these unnecessarily protracted proceedings, the Lee Homeowners are pursuing enforcement of a 2014 final judgment for $13,625,249.09 that was entered following a jury trial, together with final judgments for attorney's fees and costs entered in their favor in 2015 and 2016. In 2016, this court affirmed the 2014 final judgment, Fla. Dep't of Agriculture & Consumer Servs. v. Dolliver, 209 So. 3d 578 (Fla. 2d DCA 2016) (table decision), and the Department did not seek further review in the Florida Supreme Court. The Department also did not seek appellate review of the judgments for fees and costs.

As a result of the Department's ongoing failure to pay the outstanding final judgments, the Lee Homeowners returned to court to enforce the judgments. Although the judgments have long been final and the Department claimed that it would be "happy to pay the three judgments," the Department asserted that it is unable to make payment until the legislature appropriates the funds as required by sections 11.066(3) and (4), Florida Statutes (2015). The Lee Homeowners responded that the Department has

- 2 -

refused to take affirmative action to obtain an appropriation and has taken a position that has resulted in the governor vetoing a legislative appropriation that the Lee Homeowners had requested. Further, the Lee Homeowners argued that sections 11.066(3) and (4) are unconstitutional as applied.

After an evidentiary hearing, the trial court entered a thorough order[1] that addressed at length the Takings Clause, the pertinent statutes, and the applicable case law, together with the evidence that the parties presented. The court determined that sections 11.066(3) and (4) are unconstitutional as applied and issued a writ of mandamus directing the Department to pay the judgments. As the court explained, "To essentially argue that the [Lee Homeowners] should just hope that someday, some year, the Legislature eventually will pass an appropriation to cover the judgments, and further that the governor finally will assent, while at the same time doing absolutely nothing to secure such an appropriation, is a specious argument." (Order p. 7) We agree with the trial court's well-reasoned decision and affirm.

## I. Introduction

The question before this court is whether the trial court erred in declaring sections 11.066(3) and (4) unconstitutional as applied to the Lee Homeowners' takings judgments and in issuing a writ of mandamus compelling payment. Sections 11.066(3) and (4) provide as follows:

> (3) Neither the state nor any of its agencies shall pay or be required to pay monetary damages under the judgment of any court except pursuant to an appropriation made by law. To enforce a judgment for monetary damages against the state or a state agency, the sole remedy of the judgment

---

[1]The entire order can be found at the following link on our website:
https://www.2dca.org/content/download/540183/6097146/2D18-1393.pdf

creditor, if there has not otherwise been an appropriation made by law to pay the judgment, is to petition the Legislature in accordance with its rules to seek an appropriation to pay the judgment.

(4) Notwithstanding s. 74.091, a judgment for monetary damages against the state or any of its agencies may not be enforced through execution or any common-law remedy against property of the state or its agencies, and a writ of execution therefor may not be issued against the state or its agencies. Moreover, it is a defense to an alternative writ of mandamus issued to enforce a judgment for monetary damages against the state or a state agency that there is no appropriation made by law to pay the judgment.

Under section 11.066(3), a court may not require a state agency to pay a judgment for monetary damages absent an appropriation made by the legislature. In the event of nonpayment of a monetary judgment due to a lack of appropriation, the judgment creditor must petition the legislature for an appropriation. Id. Section 11.066(4) expressly prohibits the courts from issuing a writ of execution or using any common-law remedy against the state agency to enforce the monetary judgment. And, in the event a court issues an alternative writ of mandamus to compel payment, section 11.066(4) provides that the lack of an appropriation is a valid defense.

The difficulty with these provisions is that despite the constitutional imperative in the Takings Clause, they give the legislature the sole discretion to decide whether and when to make an appropriation. And if an appropriation is made, it is subject to the governor's sole discretion to veto it. By doing so, application of these statutory provisions could subject payment of a takings judgment to the whim of the legislature and governor. And this could result in sections 11.066(3) and (4) effectively abrogating judgment creditors' constitutional rights to full compensation under the Takings Clause.

- 4 -

## II. Facts

This action began in 2003 when the Lee Homeowners sued the Department for inverse condemnation for taking 33,957 healthy citrus trees located on 11,811 residential properties. The Department had taken the trees in the course of its efforts to eradicate citrus canker. In 2014, following a jury trial, the trial court entered a judgment awarding the Lee Homeowners $13,625,249.09 plus interest and a judgment awarding them $821,993.12 in attorney's fees. The takings judgment was affirmed by this court. See Dolliver, 209 So. 3d 578. This court also awarded the Lee Homeowners appellate attorney's fees, and the trial court entered a third judgment in the amount of $70,892.50.[2]

In the 2017 session of the Florida Legislature, the Lee Homeowners requested an appropriation to pay the judgments. The legislature passed a bill in the session that included such an appropriation. However, Commissioner Adam Putnam had made public statements suggesting that the Department was still challenging the judgments, and Governor Scott line-item vetoed the appropriation in apparent reliance on those statements on June 2, 2017.

On June 8, 2017, the Lee Homeowners filed a petition for writ of mandamus or to declare sections 11.066(3) and (4) unconstitutional in the trial court. The court issued an alternative writ and held a hearing on the petition. In March 2018, the court entered an order that detailed at great length the evidence presented and

_____

[2]Prior to the Lee Homeowners' trial, other homeowners around the state who were affected by citrus canker filed four class-action inverse condemnation actions against the Department. In the Miami-Dade County case, the Department obtained a defense verdict. The homeowners obtained judgments in Broward, Palm Beach, and Orange Counties.

contained extensive findings. It is not necessary to repeat the trial court's findings for the purposes of this opinion. We simply note that the court's factual findings are supported by the evidence.

The court determined that the Lee Homeowners established the elements necessary for a writ of mandamus: (1) they have a clear legal right to payment of the judgments, (2) the Department has a legal duty to pay, and (3) they are without an adequate remedy at law because the legislature has not been able to successfully pass an appropriation resulting in payment. But the court also determined that, despite the Lee Homeowners' satisfaction of these elements, sections 11.066(3) and (4) precluded the court from issuing a writ of mandamus directing the Department to pay the judgments.

The trial court then examined sections 11.066(3) and (4) and held that the statutes were unconstitutional as applied. Based on that conclusion, the court stated it would enter a writ of mandamus ordering the Department to immediately pay or arrange for payment of the three judgments. If the Department did not comply, the court would consider entering an order to show cause why the Department should not be held in contempt. Alternatively, the court would consider issuing a writ of execution. The court authorized the Lee Homeowners to conduct a deposition in aid of execution and submit to the court a list of the Department's properties that would satisfy the judgments. The court would review the list, conduct a duly noticed hearing, and decide which, if any, of the properties may be subject to a writ of execution.

The writ of mandamus issued in April 2018. The Department filed this timely appeal of the March 2018 order and the April 2018 writ of mandamus. While the

appeal has been pending, two more legislative sessions have passed without the appropriation of any funds for the takings judgments.

### III. Issues/Analysis

**A. The Department's Ability to Pay**

The Department asserts that the trial court erred in issuing a writ absent evidence that it had the present ability to pay the judgments. We recognize that the total inability to pay the judgments may preclude issuance of a writ of mandamus. See State v. Amos, 131 So. 122, 123 (Fla. 1930); State v. Tavares & G.R. Co., 82 So. 833, 835 (Fla. 1919); Conner v. Mid-Fla. Growers, Inc., 541 So. 2d 1252, 1256 n.7 (Fla. 2d DCA 1989). However, the Department has not established that it lacks the ability to satisfy the judgments in full or in part. Instead, the Department's position is that it is not legally authorized (or required) to pay the judgments until the legislature appropriates the funds for that purpose as required by sections 11.066(3) and (4).

Based on the evidence presented the trial court found that the Department failed to demonstrate an actual inability to pay. Indeed, the Department has made no efforts to pay or secure payment of the judgments, and it has failed to request an appropriation in order to make payment.[3] In fact, when the legislature included an appropriation in the 2017 budget, the Department's position that the judgments were not final resulted in the governor vetoing that appropriation. As to the 2018-19 budget, the

_____

[3]In its reply brief, the Department asserted that it requested an appropriation to pay the three judgments in its Legislative Budget Request (LBR) for 2020-21, which was filed while this appeal was pending. The Department informed this court that we could take judicial notice of the LBR but did not file a motion requesting same. Regardless, this court has taken judicial notice of Senate Bill 2500, the fiscal year 2019-20 budget, which does not contain an appropriation for the judgments.

Department sought millions of dollars for increased salaries and vehicles, while admittedly doing nothing to assist and support proposed appropriations to pay the judgments. In summary, as found by the trial court, "The overwhelming and conclusive evidence demonstrated that the" Department failed to pay the "judgments or make even the most basic of efforts to secure an appropriation of funds to pay" the judgments. (Order p. 15)

**B. The Alleged Failure to Exhaust Legal Remedies**

The Department next argues that the constitutionality challenge to sections 11.066(3) and (4) was not ripe because the Lee Homeowners did not file a claim bill under section 11.066(3). However, section 11.066(3) does not mention a claim bill but merely states: "To enforce a judgment for monetary damages against the state or a state agency, the sole remedy of the judgment creditor, if there has not otherwise been an appropriation made by law to pay the judgment, is to petition the Legislature in accordance with its rules to seek an appropriation to pay the judgment." (Emphasis added.) The Fourth District has already rejected this exhaustion of remedies argument on the same basis in the Broward County litigation. See Bogorff v. Fla. Dep't of Agric. & Consumer Servs., 191 So. 3d 512, 514 (Fla. 4th DCA 2016).

As noted previously, an appropriation had been made during the 2017 legislative term, but it was vetoed by the Governor apparently based on the Department's incorrect position that the judgments were not final. Moreover, the evidence before the trial court established that the Department had not previously raised section 11.066 as an impediment to paying other judgments. Based on the

analysis in Bogorff and the circumstances here, we conclude that the constitutionality challenge to sections 11.066(3) and (4) was ripe.

## C. The Constitutionality of Sections 11.066(3) and (4)

The trial court found sections 11.066(3) and (4) unconstitutional as applied because the provisions (1) unconstitutionally restrict the Lee Homeowners' rights to payment of full compensation for a governmental taking of their property under article X, section 6(a), of the Florida Constitution; (2) violate the separation of powers doctrine under article II, section 3; and the power of the judiciary under article V, section 1; (3) violate the Lee Homeowners' rights of access to the courts under article I, section 21; and (4) unconstitutionally conflict with section 74.091, Florida Statutes (2015), which provides property owners the right to obtain a writ of execution to enforce a judgment in an eminent domain proceeding. The Department challenges all of these findings, and we adopt the trial court's well-reasoned analysis in its entirety. For purposes of this opinion, we address the first two findings because they are the most compelling.

1. **Right to full compensation for a governmental taking of property under art. X, § 6(a)**

In finding sections 11.066(3) and (4) unconstitutional on this basis, the trial court reasoned, in part, as follows:

> As stated in Notami Hospital of Florida, Inc. v. Bowen, 927 So. 2d 139, 142 (Fla. 1st DCA 2006), "[s]tate constitutions are limitations upon the power of [] state legislature[s] . . . ." As a result, a statute enacted by the Legislature may not restrict a fundamental right granted under the Florida Constitution. "To the extent [] a statute conflicts with express or clearly implied mandate[s] of the Constitution, the statute must fa[l]l." Id. at 142. Not surprisingly, courts rely on this principle—legislative authority necessarily yields to constitutional pronouncements—in the very context at issue

- 9 -

here: where legislation conflicts with the express or implied mandate of Article X, § 6(a).

In Storer Cable T.V. of Fla., Inc. v. Summerwinds Apts. Assocs. Ltd., 493 So. 2d 417 (Fla. 1986), the Florida Supreme Court held that a statute purporting to authorize a television service provider to enter private property without providing full compensation to the owner was unconstitutional under Article X, § 6, Fla. Const., as well as the Fifth Amendment to the United States Constitution. Id. at 418. Similarly, in the inverse condemnation case of Drake v. Walton County, 6 So. 3d 717 (Fla. 1st DCA 2009), the First District Court of Appeal held that regardless of the county's statutory authority to excavate drainage paths to preserve property under § 252.43(6), Fla. Stat., the county's statutory authority "must yield to Article 10, section 6 of the Florida Constitution," requiring payment of full compensation to the aggrieved party. Id. at 722.

No legislative pronouncement may thwart the implementation of a constitutional mandate—particularly where, as is typically the case and here, the constitutional provision is self-executing. In such cases, the Legislature may enact legislation addressing the constitutional right conferred, but only to further protect the right or make the right more readily available, not to undermine it. See, e.g., Florida Hospital Waterman, Inc. v. Buster, 984 So. 2d 478, 485 (Fla. 2008) (recognizing that [a] constitutionally granted right "may be supplemented by legislation, further protecting the right or making it available," and that such does not prevent the provision from being self-executing). In Florida Hospital, the Florida Supreme Court explained:

> The will of the people is paramount in determining whether a constitutional provision is self-executing and the modern doctrine favors the presumption that constitutional provisions are intended to be self-operating. This is so because in the absence of such [a] presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people.

Id. at 486 (quoting Gray v. Bryant, 125 So. 2d 846, 851 (Fla. 1960)).

Application of §§ 11.066(3) and (4) to prevent or limit payment of the three judgments awarded to [the Lee

Homeowners] in this constitutional takings proceeding similarly "run[s] afoul" of the self-executing, constitutional mandate that requires it. See Florida Hospital. As reflected in the cases discussed above, the payment of full compensation for a taking is compulsory. . . .

While the Legislature may permissibly implement the constitutional mandate in order to further protect the constitutional right to full compensation for a taking, or to make the right more readily available, §§ 11.066(3) and (4) do precisely the opposite. Application of §§ 11.066(3) and (4) to preclude issuance of a writ of execution will preclude the efforts of the Lee Homeowners to secure their constitutional right to payment of full compensation, and subject the payment of lawfully entered constitutional takings judgments to the vagaries of the legislative appropriations process. Absent judicial action, application of these sections will render payment of constitutional compensation entirely subject to the arbitrary exercise of the Legislature's discretion to appropriate funds, leaving little doubt that the constitutional guaranty of payment of full compensation will be denied to [the Lee Homeowners]. Put another way, [the Lee Homeowners'] right to full compensation is subject to the will of the Legislature to pass an appropriation, and the Governor to approve it, thereby essentially making the subject guarantee of full compensation under our State Constitution an illusory promise with no guarantee of compliance. Accordingly, the interpretation and suggested application of §§ 11.066 (3) and (4) must yield to Article X, § 6(a), Fla. Const.

(Order pp. 46-47) (footnotes omitted).

The Department raises three challenges to this analysis. First, it argues that the Takings Clause does not trump sections 11.066(3) and (4) because those sections are premised on the doctrine of sovereign immunity, which predates the constitution. The Department asserts that the supreme court has found constitutional a statutory cap that contained a similar restriction on payment for governmental negligence. See Cauley v. City of Jacksonville, 403 So. 2d 379, 379 n.1, 384 (Fla. 1981) (upholding a statute providing a cap on tort judgments against a municipality and

providing that judgments in excess of the cap "may be paid in part or in whole only by further act of the Legislature").

However, as noted by the Lee Homeowners, the underlying principle behind the Takings Clause is that the government is not immune from the obligation to pay full compensation when it takes and destroys private property. See State Road Dep't of Fla. v. Tharp, 1 So. 2d 868, 869-70 (Fla. 1941); Hillsborough County v. Kensett, 144 So. 393, 395 (Fla. 1932). Additionally, Cauley did not involve a statute that, as applied, completely deprived homeowners of their rights to compensation for a taking. Instead, Cauley involved the application of a statute that provided a cap on tort judgments, subject to further legislative action. Cauley, 403 So. 2d at 379 n.1. Here, as discussed previously, the Department takes the position that it will make no payment of the final judgments absent specific legislative appropriation; that it has no obligation to take any action to secure such an appropriation; and that it is up to the legislature to decide whether to make an appropriation. We agree with the trial court that these statutes, as applied here, are contrary to the Takings Clause.

Second, the Department argues that sections 11.066(3) and (4) are reasonable restrictions on the means by which a takings judgment may be paid. See, e.g., District of Columbia v. Heller, 554 U.S. 570, 626 (2008) (recognizing reasonable restrictions on the constitutional right to bear arms); Buss v. Reichman, 53 So. 3d 339, 344 (Fla. 4th DCA 2011) ("The Florida Supreme Court has repeatedly recognized that like other constitutional rights, the right to habeas relief is subject to reasonable restrictions."). However, based on the evidence presented sections 11.066(3) and (4)'s restrictions, as applied, completely deprive the Lee Homeowners of their rights to full

- 12 -

compensation for the government's taking. In short, the restrictions have not regulated payment; they have allowed the Department to completely avoid payment contrary to the Takings Clause.

And third, the Department argues that there are no Florida cases declaring unconstitutional a statute that provides a process for payment of a governmental obligation. The Department asserts that the cases cited by the trial court involve instances of no compensation for a taking while sections 11.066(3) and (4) merely regulate the process for obtaining compensation. However, the Department mischaracterizes the result of sections 11.066(3) and (4) under the circumstances here. As applied, the statues are being used as a shield against required compensation established by the final judgments and in accordance with the Takings Clause.

**2.      Separation of powers under article II, section 3; and the power of the judiciary under article V, section 1**

In finding sections 11.066(3) and (4) unconstitutional on this basis, the trial court reasoned, in part, as follows:

> Application of §§ 11.066(3) and (4) also sets them at odds with another long-settled and well-enshrined principle; the determination of full compensation is a judicial function that cannot constitutionally be performed by the Legislature. As the Florida Supreme Court long ago held in Daniels v. State Road Dep't, 170 So. 2d 846, 851 (Fla. 1964):
>
>> It is well settled that the determination of [what is] just compensation for the taking of private property for public use 'is a judicial function that cannot be performed by the Legislature either directly or by any method of indirection.'
>
> Id. at 851 (emphasis added, quoting Spafford v. Brevard, 110 So. 451, 455 (Fla. 1926)).
> Indeed, this oft-repeated principle is a hallmark of citrus canker jurisprudence. See, e.g., Patchen v. Dep't of

- 13 -

Agriculture, 906 So. 2d 1005, 1008 (Fla. 2005) (holding that "the determination of what is just compensation . . . is a judicial function that cannot be performed by the Legislature") (quoting [Haire v. Fla. Dep't of Agriculture], 870 So. 2d at 785); Dep't of Agriculture v. Bonnanno [sic], 568 So. 2d 24, 31 (Fla. 1990) ("It is true that the legislature may not set conclusive values for property taken for a public purpose because the determination of just compensation is a judicial function."); State Plant Bd. v. Smith, 110 So. 2d 401, 407 (Fla. 1959) ("But where, as here, a provision for 'just compensation' is a clear requisite to the act of destruction, then we find no authority for the Legislature's specification of the maximum compensation to be paid."); [Fla.] Dep't of Agriculture v. Haire, 836 So. 2d 1040, 1048 (Fla. 4th DCA 2003), aff'd, 870 So. 2d 774 (Fla. 2004) ("Although the [l]egislature had set the amount of compensation in the act, . . . the determination of what constitutes 'just compensation' [is] a []judicial function[] which [cannot] be pre[-]empted by the Legislature.") (citing State Plant Board v. Smith, 110 So. 2d 401, 407 (Fla. 1959)[)].

The rationale for vesting the judiciary with the power to determine full compensation, instead of vesting such authority in the Legislature, is sound and controls here. As stated in Daniels:

> [']The just compensation clause may not be evaded or impaired in any form of legislation. Against the opposition of the owner of private property taken for [] public use, the Congress may not directly or through any legislative agency finally determine the amount that is safeguarded to him [by that] clause. . . . [W]hen he appropriately invokes the just compensation clause, he is entitled to a judicial determination of the amount.['] . . . And in Monongahela Navigation Co. v. U.S., supra, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 [1893], in which the Supreme Court struck down an Act of Congress purporting to exclude an element of value . . . , the court said that just compensation means that "a full and perfect equivalent for the property taken" must be returned to the owner, and that "By this l[e]gislation[] congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a

- 14 -

judicial, and not a legislative[,] question. * * * It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.

170 So. 2d at 852 (quoting Baltimore & [O.R.] Co. v. U.S., 298 U.S. 349, 368 (193[6])) (emphasis in original).

To the extent that §§ 11.066(3) and (4) are interpreted to permit the Legislature (by the appropriations process) to control the amount of compensation, if any, that [the Lee Homeowners] will actually receive under their lawfully-entered constitutional takings judgments, the Legislature, in effect, will both impose the taking and then determine whether or not, and in what amount, it will pay—in essence supplanting the jury's verdict with their own. Such a result resoundingly and repeatedly has been rejected by the Florida Supreme Court as noted in some of the aforementioned cases. A statute that allows the Legislature to exercise its discretion to determine whether or not, and in what amount, it will pay lawfully entered constitutional takings judgments is no different than legislation that purports to fix full compensation. Indeed, as succinctly stated by the Fourth District [in the Broward County litigation]:

> While the government has the ability to establish procedures for payment of its constitutional obligation, it does not have the luxury of avoiding it. Should the Class fail in obtaining a writ of mandamus, pursuant to section 11.066(4), the constitutional issue will ripen, and [t]he courts will be left with no choice but to enforce Article X, section 6(a) of the Florida Constitution.

Bogorff II, 191 So. 3d at 51[6].[4]

(Order pp. 54-56)

---

[4]Bogorff v. Fla. Dep't of Agric. & Consumer Servs., 191 So. 3d 512 (Fla. 4th DCA 2016).

- 15 -

The Department argues that sections 11.066(3) and (4) do not implicate the judicial function of determining just compensation for a taking. The Department asserts that the judiciary has already determined just compensation by entering a judgment for damages pursuant to a jury verdict. The Department claims that sections 11.066(3) and (4) "relate solely to the payment and the appropriation of state funds for the amounts previously judicially determined, a matter within the exclusive purview of the legislative, not the judicial, branch."

However, these provisions allow the legislature to exercise its discretion to determine whether, when, and in what amount to pay constitutional takings judgments. In this way, sections 11.066(3) and (4) expand the legislature's power beyond the payment and appropriation of state funds for amounts previously determined. See State Plant Bd. v. Smith, 110 So. 2d 401, 407 (Fla. 1959) (holding that a statutory cap on payment for the taking of healthy trees constituted a legislative encroachment on the judiciary's power to determine just compensation for the taking of private property). As applied, the provisions have thwarted payment of full compensation, determined through court proceedings, under the Takings Clause for years.

D.  The Doctrine of Separation of Powers

The Department argues that the order and writ violate the doctrine of separation of powers by encroaching on the legislative prerogative to appropriate funds and the Department's prerogative to control its own budget. We acknowledge that generally "[t]he judicial branch may not either interfere with the legislative branch by requiring funds to be spent by an executive agency in a manner not authorized by statute, nor interfere with an executive agency's discretion in the spending of

- 16 -

appropriated funds."  Dep't of Children & Families v. K.R., 946 So. 2d 106, 107-08 (Fla. 5th DCA 2007).  However, by specifying a defense to issuance of a writ of mandamus, section 11.066(4) itself recognizes the authority of the judicial branch to issue a writ of mandamus compelling a state agency to pay a valid judgment against it.  And the supreme court has recognized that "issuance of the writ of mandamus is an appropriate enforcement mechanism" for a judgment against a governmental entity.  Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1271 (Fla. 2008).

## E.  Writ of Execution

The Department challenges the portion of the order providing that if it fails to comply with the writ of mandamus the court would consider issuing a writ of execution against the Department's property.  It also challenges the portion of the order allowing the Lee Homeowners to conduct a deposition in aid of execution and to submit a list of executable property to the trial court.  The Department argues that these rulings violate section 11.066(4) and the Department's protection as a sovereign.

However, we have considered both of these arguments and conclude that both authorities cited by the Department yield to the Lee Homeowners' constitutional rights to be compensated for the governmental taking.  Furthermore, as noted by the Lee Homeowners, any challenge to these provisions is premature because the court indicated that it would not issue a writ of execution without conducting a duly noticed hearing to decide which, if any, of the Department's property may be subject to a writ of execution.

## IV.  Conclusion

- 17 -

After considering all arguments made by the Department, we conclude that the trial court did not err in declaring sections 11.066(3) and (4) unconstitutional as applied to the Lee Homeowners' takings judgments and in issuing a writ of mandamus compelling payment. Applying sections 11.066(3) and (4) to prevent the trial court from issuing a writ of mandamus would preclude the Lee Homeowners from securing their constitutional rights to payment of full compensation under article X, section 6(a), of the Florida Constitution. It would also allow the legislature to control the amount of compensation, if any, that the Lee Homeowners will actually receive in contravention of the separation of powers doctrine under article II, section 3; and the power of the judiciary under article V, section 1. We echo the following sentiment of the trial court: "This Court cannot and will not countenance further delays in securing payment to [the Lee Homeowners] of the constitutionally-guaranteed full compensation that was adjudicated to finality in this case." We affirm the orders on appeal.

Affirmed.

NORTHCUTT, JJ., Concurs.

BADALAMENTI, Judge, Concurring specially.

I fully concur in the opinion of the court. I write separately to suggest that the legislature consider certain amendments to section 11.066, Florida Statutes (2015).

As an initial matter, our holding subsections 11.066(3) and (4) unconstitutional as applied comes after careful determination that no other grounds were available to enforce the final judgment rendered in favor of the plaintiffs here. See In re Holder, 945 So. 2d 1130, 1133 (Fla. 2006) ("Of course, we have long subscribed to

a principle of judicial restraint by which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds.").  And we act today to protect the Lee Homeowners' self-executing constitutional right to receive "full compensation" for the Department's taking of their 33,957 citrus trees.  See art. X, § 6(a), Fla. Const.  Indeed, neither the Constitution of the United States nor the Constitution of the State of Florida's respective takings provisions means anything unless those who have been deprived of their private property are paid for what the state took from them.  See Bogorff v. Fla. Dep't. of Agric. & Consumer Servs., 191 So. 3d 512, 516 (Fla. 4th DCA 2016) (citing Tampa–Hillsborough Cty. Expressway Auth. v. A.G.W.S. Corp., 640 So. 2d 54, 58 (Fla. 1994)) (explaining that the Florida Supreme Court has interpreted the takings clauses of the United States and Florida Constitutions coextensively).

The text of the takings provisions of both the Fifth Amendment and Florida's constitution yields the obvious conclusion that they are self-executing.  See amend V, U.S. Const. ("[N]or shall private property be taken for public use, without just compensation."); art. X, § 6(a), Fla. Const. ("No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner . . . .").  In other words, these takings provisions do not require enabling legislation to be effective.  If a person's private property is physically taken by the government without "full compensation" at the time that the government took it, as we have here, we are able to discern a constitutional violation has occurred simply by the operation of the constitutional provisions.  See Knick v. Twp. of Scott, 139 S. Ct. 2162, 2171 (2019) ("Because of 'the self-executing character' of the Takings Clause [of the Fifth

Amendment to the United States Constitution] 'with respect to compensation,' a property owner has a constitutional claim for just compensation at the time of the taking." (quoting First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal., 481 U.S. 304, 318 (1987))); Flatt v. City of Brooksville, 368 So. 2d 631, 632 (Fla. 2d DCA 1979) (noting that article X, section 6(a) of the Florida Constitution "does not require enabling legislation to be effective").  Even still, this case illustrates that the operation of even a self-executing constitutional provision has its challenges.

With the challenges presented in this case in mind, the legislature may wish to consider amending section 11.066 to take steps to accelerate the finality of constitutionally-based final judgments entered against the state and its agencies in our state's courts of law.  As to finality, the answer cannot be, as the Department suggests, that takings plaintiffs must wait an indeterminate, if not infinite, number of legislative sessions for the state to fully satisfy constitutionally-based monetary judgments.  And the position of a state agency should not be, as here, that it owes no duty to assist takings plaintiffs with the process of receiving payment of constitutionally-based monetary judgments.

Specifically, the legislature may first consider amending section 11.066 to include that the state and its agencies provide immediate, accurate, and ongoing information to the legislature until constitutionally-based monetary judgments are paid in full.  Second, the legislature may consider mandating that the state and its agencies arrange for full payment, such that the legislature can appropriate new funds or authorize its agencies to reappropriate funds from its existing till, of such constitutionally-based judgments.  Third, the legislature may consider adding that full

- 20 -

payment must be disbursed in a period not to exceed two legislative sessions from the issuance of the mandate in the state's supreme court or, if not appealed to the supreme court, the district courts of appeal. It is my view that much of this extended postjudgment litigation would have been unnecessary had the Department fully and accurately communicated the status of the litigation to the legislature and the governor and had the Department continuously assisted the Lee Homeowners in collecting the final monetary judgment entered against it.